## Stacy, et al. v. Alexander.

(Decided April 14, 1911.)

### Appeal from Estill Circuit Court.

1. Evidence.—Under subsection 2 of Section 606 of the Civil Code of Practice, which precludes one from testifying for himself concerning any verbal statement of, or transaction with, or any act done by one who is dead when the testimony is offered to be given, a plaintiff will not be permitted to tell of conversations with one who has since died, concerning the location of the boundary line between his own farm and the farm of the defendant.

2. Same—Under subsection 2 of Section 606 of the Civil Code of Practice, a defendant will not be permitted to testify that her deceased husband, from whom she acquired title, claimed to the extent of the boundary shown by his deed, which embraced the land in dispute.

3. Same.—Subsection 2 of Section 606 of the Civil Code of Practice does not, however, prohibit the sons of the defendant from testifying in behalf of their mother, the owner of the land, that their deceased father had claimed to the extent of the boundary shown by his deed, which embraced the land in dispute.

4. Boundaries—Lost Corner or Line.—A lost corner or line of a boundary may be found by extending the line from the known or proven corners of the courses called for, until they come together; and the point of intersection is the lost corner.

5. Same.—In determining boundaries, natural and permanent objects control courses and distances; courses and distances must yield to well-known objects called for.

6. Declarations as to Boundary.—Declarations by the owners of land accompanying the act of possession, whether in disparagement of the declarant's title or otherwise qualifying his possession, if made in good faith, are admissible as part of the res gestae.

7. Division Line by Parol.—A division line between adjacent land owners need not be in writing to be valid or enforcible.

J. B. WHITE and CLARENCE MILLER for appellants.

RIDDELL & FRIEND, W. H. LILLY, HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee, James D. Alexander, brought this action against the appellant, Elizabeth Stacy, for the purpose of trying the title to thirteen acres of timbered land on the waters of Cow Creek in Estill county. The appellee alleged that he was the owner and in possession of said tract of land, and that the appellant had cut and would continue to cut trees on said land, unless she should be enjoined therefrom; and he prayed that she be enjoined and restrained from entering upon said land and from cutting or removing any of the timber thereon or therefrom, and that he have a judgment against her for fifteen dollars' damages. The appellant answered, denying appellee's title and asserting her own title to the disputed thirteen acres.

The parties owned adjoining tracts of land; Alexander's tract lying on the east side of Mrs. Stacy's tract. Both tracts are within the Morgan, Spillman and Searcy grant of 4,014 acres of February 26, 1800. Both parties derive title from a common grantor, John Tipton, who purchased from Sudduth in 1818. The Alexander farm was conveyed by proper deeds of the several grantors, until it was vested in James Alexander in 1857; and in 1886 James Alexander conveyed it to the appellee, J. Dudley Alexander, who has owned and possessed it ever since. The Stacy farm passed regularly from several owners, and was acquired by Thomas Bowman in 1858, at which time James Alexander was the owner of the adjoining Alexander farm. In 1860 Bowman conveyed his tract to Alden Stacy, and through his will the widow, appellant Elizabeth Stacy, acquired title in 1900.

It is conceded by counsel for appellee that the title papers of appellants do, in fact, cover the land in dispute, and that the title papers of appellee do not cover it. Appellee claims, however, by adverse possession up to a certain well-marked boundary for more than fifty years; and also that, if his boundary was correctly run and extended, it would include the land in question, although it does not, in fact, do so in terms. In establishing this marked boundary to which he claims, appellee introduced oral proof tending to show that his father, James Alexan-

der, who was then the owner and in possession of the Alexander farm, and Thomas Bowman, who was then the owner and in possession of the Stacy farm, agreed on a line running with Tipton's Creek (now Alexander's Creek) up to its head and to a stone corner, or, at that time, to a "white oak", now gone, and that from the time of that agreement appellee's father and appellee had claimed the land had committed acts showing their claim of ownership, which had never been questioned until shortly before this action was brought. While it is conceded that, if the lines of Alexander's deed are run in accordance with the calls thereof, the land in dispute would not be included within his boundary, it is contended, that when they are run correctly, and as was intended, the disputed land is included within Alexander's boundary; and that Alexander's line should be run so as to include the disputed land under the well-established rule, that well-known objects or monuments shall have precedence over the degree of the call or distance as shown by the description. That portion of Alexander's deed to which appellee seeks to apply this rule of construction is found in the course which runs "S. 63, W. 21 poles to a white oak on the ridge between Sweet Lick and the Alexander Branch; thence down the Main Branch to the beginning." If Alexander's boundary be strictly confined by that call, it will not include the disputed thirteen acres; but if the line be extended some 64 poles to a "white oak" on the ridge designated, and thence down the Main Branch to the beginning, the boundary will include the thirteen-acre-tract.

The thirteen acres, as well as the adjoining land of Alexander, is covered by virgin forest which has hardly been touched by the woodman. A few trees have been cut in past years upon the thirteen-acre-tract; but they were so few and were cut so long ago as to make and leave no substantial impression.

Abundant testimony from some eight or ten witnesses was given, tending to show that the "white oak" corner on the ridge was blown down by a storm some years before the war between the States, and that Processioners set a stone by the side of the "white oak" stump for the purpose of serving as a corner stone, as early as the year 1854; and it remains there to this day. The stone has become well known in the neighborhood as the "Planted Stone", and is on a path that leads from the "Climbing Cedar", another well-known monument, to the town of Irvine.

Upon the trial the jury found for Alexander in the sum of fifteen dollars; whereupon the court entered a judgment in his favor for that amount; and further, perpetually enjoined and restrained Mrs. Stacy from entering upon the thirteen-acre-tract, and from cutting and removing timber therefrom. From that judgment she prosecutes this appeal, and insists that the lower court erred in the following rulings, to-wit:

1. In admitting incompetent testimony;

2. In refusing to admit competent testimony; and

3. In giving instructions 3, 4, 5, 6, 7, 8 and 9.

1. The testimony which the court admitted over appellant's objection, and which she insists was incompetent, is found in the testimony of the appellee, who stated as follows: (a) that he was present when his father, James M. Alexander, and Alden Stacy had a conversation about three poplar trees which Stacy's hand had cut on the thirteen-acre-tract, and that Stacy paid Alexander's father for the trees; (b) that during the lifetime of Alden Stacy, James Alexander cut timber from the thirteen-acre-tract, and at no time did Stacy ever make any complaint against it so far as the witness knew or heard; (c) that Hines, a surveyor, had run the line for Bowman and James M. Alexander from the "Planted Stone" down the ridge so as to include the thirteen-acre-tract in Alexander's land; and (d) at another time, and prior to the survey made by Hines, witness was present at the "Planted Stone" with his father and Thomas Bowman, and Bowman's two sons, Martin and Joe Bowman, and that James M. Alexander then claimed the "Planted Stone" was his corner, to which Bowman agreed. James M. Alexander, Alden Stacy and Thomas Bowman were all dead when this evidence was given by the appellee, J. Dudley Alexander; and it was clearly incompetent under subsection 2 of section 606 of the Code, which precludes any person from testifying for himself concerning any verbal statement of, or any transaction with, or any act done by one who is dead when the testimony is offered to be given. The court erred in admitting this testimony. The effect of this error will be considered later.

2. The appellant, Elizabeth Stacy, offered, but was not allowed to show by her own testimony, or by that of her two sons, Hugh and James, that her husband, Alden Stacy, claimed to the extent of the boundary shown by his deed, which embraced the thirteen acres in dispute. Clearly, under the rule just announced, Mrs. Stacy could

not testify to this act of her husband in her own behalf; but we know of no rule which would prevent her two sons from giving testimony to that effect. The fact that they were her sons did not disqualify them, or render their testimony incompetent. In testifying for their mother they were not testifying for themselves within the prohi bition of section 606 of the Code of Practice. The trial court properly excluded the testimony of Mrs. Stacy, but should have admitted the testimony of her sons.

3. The court gave ten instructions, several of which were not only unnecessary, but were prolix and somewhat obscure. Of those objected to, the third instruction advised the jury that any lost corner or line of a boundary may be found by extending the lines from the known or proven corners of the courses called for, until they come together, and the point of intersection is the lost corner. The fourth instruction announced the well-established doctrine that, in determining boundaries, natural and permanent objects control courses and distances; that courses and distances must yield to well-known objects called for. These instructions were properly given. The fifth instruction gave the usual law as to adverse possession. It was not improper in form, but it should not have been given under the facts of this case, since neither party had exercised such adverse possession as would warrant the submission of that question. As appellee's case rested upon his claim that his disputed boundary, when properly run, embraced the disputed tract, the location of the boundary line was the one question to be tried. While this instruction was unnecessary, it was not, under the facts of the case, prejudicial to the rights of either party. The sixth, seventh and eighth instructions are based upon the theory, that if the parties and their respective grantors had agreed upon the "Planted Stone" as the corner between their tracts of land, and that they had agreed that a line running from the stone down the hill to the branch was the dividing line between the two tracts, and had been recognized as such by appellee and appellant, or those under whom they claim, for more than fifteen years, they should be treated as the established corner and dividing line between the two tracts. This was the controlling question in the case, and the instructions properly presented it to the jury. Berry v. Evans, 28 Ky. Law Rep. 24. There was abundant competent testimony to show that both Stacy and Bowman had repeatedly recognized and pointed out the "Planted Stone" as the corner, and a line

running therefrom down the ridge to the branch as the dividing line between the two tracts. As to the admissibility of these declarations of persons in disparagement of their title, Greenleaf's Evidence, in section 109, says:

"In regard to the declaration of persons in possession of land, explanatory of the character of their possession, there has been some difference of opinion; but it is now well settled, that declarations in disparagement of the title of the declarant are admissible, as original evidence. Possession is *prima facie* evidence of *seisin* in fee simple; and the declaration of the possession, that he is tenant to another, it is said makes, most strongly against his own interest, and therefore is admissible. But no reason is perceived, why every declaration accompanying the act of possession, whether in disparagement of the declarant's title, or otherwise qualifying his possession, if made in good faith, should not be received as part of the *res gestae;* leaving its effect to be governed by the rules of evidence."

This doctrine was recognized by this court in Mann v. Cavanaugh, 110 Ky. 785.

Evidently, there had been many years ago a contention between the then owners of these two tracts of land, as to where this division line actually lay—Alexander's grantor claiming that it extended around to the white oak tree corner which was afterwards supplanted by the stone in 1854; and from that time, according to the great weight of the evidence, the "Planted Stone" and the line running therefrom to the branch have been treated as the corner stone and boundary line. The question of the existence of that agreement and its recognition for the last fifteen years having been submitted to the jury and determined by them, we think the case was properly and fairly tried. The ninth instruction tells the jury that an agreement fixing the division line between adjacent land owners need not be in writing to be valid or enforcible, if the same has been acquiesced in by such adjacent owners for fifteen years or more. This instruction was more favorable to appellant than the law warranted. Warden v. Addington, 131 Ky. 296.

In view of the conclusion we have reached, that the controlling question of the case rests upon appellee's claim of the agreement as to the corner and the dividing line, and the continued recognition of said claim, we can not see how the minor errors committed by the trial court, as above pointed out, could have affected the result. Eliminating the incompetent testimony of the ap-

pellee, which the court improperly admitted, there is abundant testimony by other witnesses to the same effect; and, there is no testimony upon that point from the appellant. Neither do we consider it a prejudicial error against appellant, that the court refused to permit her sons to testify that their father claimed to the full extent of his boundary. There is no evidence whatever, that the disputed thirteen acres was ever in the actual possession of Stacy any more than it was in the actual possession of Alexander; while the agreed boundary lines whereby the tract fell upon Alexander's side, had been established many years before Alden Stacy became the owner of his tract, which is now held by the appellant as his devisee.

Upon the whole case, we are of opinion that the parties had a fair trial, and that no error has been committed prejudicial to the substantial rights of appellant.

Judgment affirmed.