## Wallace v. Hammond.

(Decided June 11, 1915.)

### Appeal from Lawrence Circuit Court.

Boundaries—Survey—Evidence.—In this action involving the correct line in an old Virginia survey made in 1785, the evidence is examined and held to support the judgment of the chancellor.

GARRED & GARRED and W. D. O'NEAL for appellant.

M. S. BURNS and CAIN & THOMPSON for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an action by appellant to quiet his title to a tract of land in Lawrence County and to recover for a trespass of appellee thereon, as alleged. Appellee answered denying both the title and possession of appellant, and asserted title himself, and in addition pleaded adverse possession of the disputed boundary. He further pleaded that if there was a conflict or lap in the land described by the plaintiff in his petition and that described by him in his answer, that to the extent of the lap or conflict he had title to the land and not appellant.

The controversy primarily grows out of the correct location of the South line of the 5,000-acre patent granted to David Caldwell by the Commonwealth of Virginia in the year of 1788 under a survey made in 1785.

The south line of that survey calls to run from a sugar tree on the West bank of Tug River, South 60, West 1,437 poles to a hickory, being something like a distance of four and one-half miles; but there is noth-

ing in the patent to show whether that line was run on the true meridian line or whether the proper variations were made at the time, which is shown to have been about four degrees. If that line is run on the true meridian it throws the land in controversy on the side of appellant, and he claims that to be the correct south line of the Caldwell survey; while on the other hand if that line is run allowing the proper variations it throws the land on the side of appellee.

The lower court adjudged that the last named line was the true line between the parties and dismissed the plaintiff's petition.

A great mass of very conflicting evidence was taken. by the parties; the county surveyor run the various lines as directed by the parties and filed his report together with a map, and at least two other surveyors run the lines and testified in the case.

The south line of the Caldwell patent calls for a hickory tree at the southwest corner thereof, and it is urged for appellant that as the running of the line by the true meridian there reaches a marked hickory tree, and does not reach such tree when run with the variations, that it necessarily follows that the true meridian was the correct line; but the evidence conclusively shows that the hickory, which is reached by running the true meridian line, is now, after one hundred and thirty years since the original survey, only fourteen inches in diameter, although it is situated in very rich ground. It would seem to be conclusive from this that the hickory referred to could not possibly be the hickory designated in the old patent; in the first place the corner trees referred to in the patents of the earlier days were in all probability of some size and magnitude at that time, and it is almost inconceivable that a tree then large enough to be designated as a corner tree in a large patent, would not now be more than fourteen inches in diameter, even though the hickory tree be of very slow growth as is argued. It is much more reasonable to assume that the original corner hickory tree has long since disappeared.

On the other hand the decided weight of the evidence is that the sugar tree line, or the one run with the variations, claimed by appellee to be the correct line, has been long recognized by the older citizens as the correct Caldwell line. Appellant has lived on a tract of land adjoining the land in dispute since 1881,

and appellee and his father have lived on an adjoining farm since 1877. Appellant himself admits that for thirty years or more appellee and his father and persons acting for them had cut and removed timber from the land in controversy, yet he sat idly by all those years and took no steps to stop them or to assert his claim to the land until the death of appellee's father, and after the death of several other old residents of the vicinity. Not only so, but the evidence of several witnesses shows that during those years appellant himself recognized the sugar tree line as the extent of his boundary; during those years he sold timber from his land to a number of persons, and always directed them not to go below the sugar tree line, and at least one witness states that appellant had pointed out to him the sugar tree line as the correct line between him and Hammond.

The finding of the Chancellor that the sugar tree line was the correct line between the parties was in accord with the evidence, and the judgment is affirmed. Judge Hannah not sitting.