## Nield v. Louisville and Nashville Railroad Company.

(Decided November 21, 1924.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Contracts—Evidence Held Insufficient to Establish Contract by Coal Company to Pay Part Cost of Construction of Branch Line. —Evidence held insufficient to establish contract between coal company and railroad obligating coal company to pay part cost of construction of branch line.

2. Contracts—In Absence of Express Terms, Evidence of Construction by Parties is Entitled to Great Weight.—In absence of positive proof of terms of contract, evidence of construction by parties is entitled to great weight.

JOHN C. DOOLAN, WALTER P. LINCOLN and EDMUND F. TRABUE for appellant.

HELM BRUCE and BRUCE, BULLITT, GORDON & LAURENT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Upon a former appeal it was held that the petition herein of the L. & N. Railroad Company stated a cause of action against Nield for the cost of about 2,000 feet of railroad track constructed by the railroad company for a defunct corporation, the Edgemont Coal Company,

whose assets Nield was alleged to have acquired and dissipated as sole stockholder with knowledge of plaintiff's claim, and that it had not been paid. L. & N. R. Co. v. Nield, 186 Ky. 17, 216 S. W. 62

Upon the return of the case to the circuit court, the petition was amended, issues formed and a trial had, resulting in a judgment for the company against Nield for the amount of its claim, $11.079.11, and he has appealed.

Numerous reasons are assigned for reversal of that judgment, but being convinced that plaintiff failed to prove its claim against the coal company, we need not discuss whether in any event Nield would have been liable therefor.

That there was a contract between the railroad company and the coal company under which the former constructed railroad tracks from its main line up Straight creek and thence up Kettle Island branch to a point near where the coal company contemplated opening a mine on its land, is admitted, and the dispute is as to its terms with reference to a division of the costs thereof between the two companies.

The consideration for the construction of the spur track was the mutual benefit expected to be derived therefrom by the contracting parties, and the purchase by the coal company of $150,000.00 par value of the railroad company's bonds at a price slightly in excess of their market value. The former company purchased and paid for the bonds, and the latter company built the track a part of the distance originally contemplated. It did not build it the entire distance because the coal company did not open a mine on its property, and consequently did not furnish locations for contemplated tracks to mine openings, tipples, etc.

It was alleged in the petition as amended that the contract was partly oral and partly in writing, and provided, in substance, for construction of the track up Straight creek to the mouth of Kettle Island branch at the expense of the railroad company, and up Kettle Island branch to the mine openings and tipples at the coal company's expense. No witness, however, was introduced to prove any such oral agreement, and the only evidence of the terms of the contract with reference to the matter in dispute is certain letters of the parties thereto, and their actions during the construction and after the completion of the track.

Reference to the letters only tends in a way to support the contention of the railroad company, but this evidence is merely indicative of what the contract probably would be, rather than proof of what it actually was, since the letters themselves show that the contract had not been closed and its terms were not then definitely settled, while the subsequent actions of the parties clearly indicate that both regarded the whole of the line constructed as the property of the railroad company, and treated the contract as providing that the entire cost thereof was to be borne by that company.

The letters antedating the final execution of the contract are the following:

January 13, 1909.

"Mr. R. O. Campbell,
    c/o R. O. Campbell Coal Company,
    Atlanta, Ga.

"Dear Sir:

"At the interview here on the second instant, you asked if the L. & N. R. R. Co. would renew the offer made in April, 1907, to construct the main line of a branch road up Straight creek to or near the mouth of Kettle Island branch, on condition that you and your associates purchase $150,000.00 par value of the Louisville & Nashville Atlanta-Cincinnati Line 4% mortgage bonds at 97½ and accrued interest. I expressed the opinion that this would be done, and that I would confer with our financial officers and advise you.

"I now beg leave to submit the following:

"If you and your associates will purchase from the Louisville & Nashville Railroad Company $150,000.00 par value of its Atlanta-Cincinnati line 4% mortgage bonds and pay therefor 97½ cents and accrued interest, and will arrange for a right of way, especially through the property of the Straight Creek Coal & Coke Company, the Louisville & Nashville Railroad Company will immediately enter upon construction of the main line of such branch road, from point of intersection with the main line of its Cumberland Valley division at or near Pineville to a point near the mouth of Kettle Island branch, which, on surveyed line dated November, 1906, will be at about station 290; the

tracks to the coal mine openings, tipples, etc, to be constructed at the expense of your coal company.

"I will personally co-operate with you in endeavoring to secure right of way through the property of the Straight Creek Coal & Coke Company.

"Yours truly,
"(Signed) M. H. SMITH,
President."

"CAMPBELL COAL MINING COMPANY

"Knoxville, Tenn., Feb. 24th, 1909.

"Mr. Milton H. Smith,
Pres't L. & N. R. R.,
Louisville, Ky.

"Dear Sir:

"We have three small tracts of land which are either in our present acreage, or near same, which we desire to obtain before anything is known of the construction work on Straight creek. We have them well in hand and expect to close within the next week or ten days. We will then advise you regarding same, and enter into contract with your railroad for construction of the Straight creek line. This is merely to advise you that we wish to carry out our agreement as early as possible.

"Yours very truly,
"EDGEMONT COAL COMPANY,
"(Signed) R. O. CAMPBELL, President.

"May 31, 1909.

Messrs. R. O. Campbell,
c/o R. O. Campbell Coal Co.,
Atlanta, Ga.

"C. S. Nield,
c/o North Jellico Coal Co.,
Wilton, Ky.

Representing the Edgemont Coal Company.

"Gentlemen:

"Referring to interview of the 19th instant, at which you verbally advised me of your desire that the L. & N. R. R. Co. construct or acquire a railroad from point on its line near Pineville to the mouth of Kettle Island creek, under the terms and conditions

of letter dated January 13, 1909, to R. O. Campbell (copy enclosed herewith), which were accepted by Mr. R. O. Campbell, president Edgemont Coal Company, as per letter dated Knoxville, Tenn., February 24, 1909 (copy herewith).

"In compliance with your request, I have entered upon negotiations with the Straight Creek Coal & Coke Company, with a view to acquiring between 10,000 and 11,000 feet of their existing road. The negotiations have not been completed, and it is not yet determined whether the L. & N. R. R. Co. will acquire this portion of the road on the south side of Straight creek, or construct an independent road on the north side of the creek.

"However, before proceeding further, I wish to have a distinct understanding as to the time at which you will take and pay for the bonds. I do not wish to commit myself to the purchase or construction of the road until that part of the agreement is duly executed.

"Yours truly,
"(Signed) M. H. SMITH, President."

After having stated his inferences from the letters as to oral discussions between the parties in the intervals, and that shortly after the date of the last one the coal company bought the bonds and the railroad company began work on the tracks, counsel for the latter thus concludes: "We thus have the contract completed. It is true the petition, or rather the amended petition, says the contract was partly in writing and partly oral; but reference is made to the interviews, to which we have already referred, and doubtless to an interview immediately following the letter of the 31st, in which its terms were accepted and the bonds were purchased, which thus complied with the condition that Mr. Smith had annexed to his letter."

This discloses the fact that the case for the railroad company depends finally, not upon the letters or any oral proof of the contract, but upon what its counsel says "doubtless" happened after May 31st, when clearly the parties for the first time finally reached an agreement that they regarded as binding. That this is true is conclusively shown by these very letters upon which appellee relies almost exclusively to prove the contract. In his letter of February 24, the president of the

coal company indicates his willingness, wthin the next week or ten days, to "enter into contract with your railroad company for the construction of the Straight creek line." In his letter of May 31st, the president of the railroad company expressly states that even then he was unwilling to commit his company to "the purchase or construction of the railroad."

Evidently then, on May 31, neither party was committed to the letter of January 13 as a correct statement of the terms of the contract under which at a later time the bonds were bought and the spur track constructed, and yet this is the only statement of it in the entire record, and instead of building the road as was then contemplated on the south side of Straight creek, the railroad company bought and built tracks on the opposite side of the creek, and beyond the mouth of Kettle Island branch, not necessarily in accordance with the letter of January 13, as amended by the letter of May 31st, but in accordance with a contract thereafter executed.

These letters, therefore, do not prove the contract under which the tracks were built, but simply indicate what its terms were apt to have been. As proof that such actually were its terms, the railroad company proves only that it kept separate accounts for the construction work done on Straight creek and on Kettle Island branch.

On the other hand, it was shown that the cost of the construction on both creeks was charged by the railroad company to its capital investment, and not merely the part acquired and constructed up Straight creek to the mouth of Kettle Island branch, which it is now claimed was all that was chargeable against capital investment.

Although the work of construction was completed in the summer of 1910, and the Edgemont Coal Company sold all of its property in August, 1911, to the Pioneer Coal Company, the railroad company never presented a bill to anyone until May 22, 1912, when it asked the Pioneer Coal Company to assume liability for the claim now sued on, by executing a contract for the construction of the tracks already constructed up Kettle Island branch as a part of the "tipple tracks" of that company.

Prior to that time the Edgemont Company had conveyed to the railroad company a strip of land 100 feet wide and covering the track up Kettle Island branch.

Having completed the construction of the railroad and acquired a deed containing a covenant of general warranty for right of way over the land upon which it was constructed, the railroad company opened a station at its terminus, published tariff rates to and from that point, and treated the portion of the track beyond the mouth of Kettle Island branch as its own and like every other part of its road until in 1912, when for the first time this claim was asserted against anybody, and from which time only it began to keep a separate account of maintenance expense for that portion of the road.

In the meantime the coal company, with the knowledge of the railroad company, had transferred all of its property to the Pioneer Coal Company, disposed of its assets, and retired from business in this state, and the railroad company had constructed for the Pioneer Coal Company "tracks to the mine openings and tipples" which that company had opened and constructed upon the land formerly owned by the company against which this claim is now alleged to have originated.

Certainly, then, it is clear that, not only had the railroad company failed to prove with certaintly the terms of the contract under which it constructed the track now in controversy, but the evidence as a whole shows that from the time that contract was executed both parties thereto, for more than two years thereafter, construed and treated it as providing that the railroad company was to own, operate, and pay for, as a capital investment, all of the track it had constructed under that contract.

In the absence of positive proof of the terms of a contract, evidence of its construction by the parties at the time and for so long a time thereafter, is entitled to great weight, and, in our judgment, should be treated as conclusive here.

Moreover, the same conclusion seems to us inevitable, even if we assume that the letters, *supra,* state the terms of the contract with reference to the matter in dispute, because of ambiguity therein as to the point to which the tracks were to be built at the expense of the railroad company, and from which the cost of construction was to be borne by the coal company. The letter of January 13 fixes that point as "near the mouth of Kettle Island branch, which, on survey line dated November, 1906, will be about station 290," but the letter of May 31 shows clearly a disposition to abandon the survey of November, 1906, and to purchase and construct a line

on the opposite side of Straight creek, and the latter course was the one adopted.

Besides, there is no statement anywhere that the coal company was to pay any part of the construction cost except for "the tracks to the coal mine openings, tipples, etc.," and which the railroad company did not then construct because the Edgemont Coal Company never furnished it locations for such tracks, but which it did later construct for the Pioneer Coal Company.

So that from the letters considered as the contract, it is determinable with certainty only that the railroad company was to pay for the construction of tracks on the north side of Straight creek to a point indefinitely described as "near the mouth of Kettle Island branch," while the coal company was to pay only for the tracks to its mine openings and tipples.

The location of the division point then depends upon what the parties meant by the word "near," which might mean a few feet, a few hundred feet, or, possibly, a few thousand feet, depending upon the circumstances and particularly upon the length of Kettle Island branch.

The railroad company, as already stated, built the track up Kettle Island branch about 2,000 feet and stopped, because it could not go any further until the coal company located its mine openings and tipples. It charged the cost of construction to that point against its capital investment, and opened a station there, required the coal company to execute it a general warranty deed for the right of way, and for over two years never asserted a claim against the coal company for any part of the cost incidental thereto, and it is certain, in view of the contract, that the parties thereto, for at least two years after its execution, construed it to mean that the railroad company was to pay for what had been constructed and that the coal company was to pay for the unconstructed tracks to its mine openings and tipples when located, and that the present contrary contention of the railroad company is clearly an afterthought.

Much stress is laid upon two letters written by Mr. Nield to the railroad company after it had asserted this claim against the Pioneer Coal Company, and of which Mr. Nield was general manager, in which he stated that he had "nothing in particular to offer in contravention" of the railroad company's contention, and that "I do not take exception to anything in the record, but on the other

hand acknowledge all you claim to be binding upon the Edgemont Coal Company.''

While these admissions would have been competent against the Edgemont Coal Company in a suit against it, since Mr. Nield was a vice-president of that company, they would not have been conclusive against it, nor are they conclusive, although admissible, against him here. They show at most, and as construed by appellee, that Mr. Nield at the time believed the Edgemont Coal Company was liable for the claim and was willing, as is also indicated by two letters written by his attorneys to the other stockholders in the Edgemont Coal Company, to assume his proportionate part thereof. To this the other stockholders in that company refused to agree, and he certainly is not precluded, when the claim is asserted against him alone, from denying liability of the Edgemont Coal Company, for unless it was liable he is not, even though when first asserted and as then informed he personally believed it was a valid debt of the Edgemont Coal Company.

We are, therefore, of the opinion that the chancellor erred in rendering judgment against Nield for the claim, and the cause is remanded with directions to dismiss the petition.