## Mary Farley, et al. v. Borderland Coal Company, et al.

(Decided March 11, 1927.)

### Appeal from Pike Circuit Court.

Boundaries—Where Owners of Overlapping Patents for 60 Years Acquiesced in Intermediate Line as Boundary, Such Agreement was Binding on Their Privies.—Where patent lying to north, of ridge and patent lying to south of ridge overlapped by extending to further sides of ridge, and owners of respective patents for 60 years recognized and acquiesced in each other's claim to center of ridge, held that such agreement, supported by consideration, was binding on parties and their privies.

ROSCOE VANOVER for appellants.

STRATTON & STEPHENSON and J. J. MOORE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

There is a stream of water in Pike county known as Big creek. Two of its tributaries are Chafin's branch and Burget's branch, the latter lying to the south of the former. A ridge called Slate Rock Point forms a watershed between these two branches.

In February, 1852, there was issued by the state of Kentucky what is known in this record as one of John Burget's patents, this particular patent being for 100 acres. This patent in the main lay on the Burget branch side of the ridge referred to, but it extended in part over on the Chafin branch side of that ridge, embracing on that side from three to six acres, depending on how the patent is run out on the ground. However, to what extent this patent lay on the Chafin branch side of the ridge is not material in this litigation; only the fact that it did run over on that side. In 1855, there was issued by the state what is known in this record as the David Stepp patent for 50 acres. The beginning corner of this patent was one of the corners of an earlier patent known as the Madison patent of 1796 for 2,023 acres.

The parties to this litigation seem to agree on the beginning corner of the David Stepp patent, it being at a beech now gone, but whose location, when standing, is agreed to have been on Chafin's branch a short distance from its mouth. The first ten calls of the David Stepp patent are easily run. The corners of these calls are easily found and easily identified. The last call of the David Stepp patent, if reversed, may also be easily run. But the calls between the one ending at the tenth corner and the last call in the patent, if literally followed, will not close the patent. The survey on which the David Stepp patent was issued was made by a surveyor by the name of John May, who did a lot of surveying in Pike county, and whose surveys, as the parties to this record agree, were very inaccurate. It is agreed that May never actually ran out the survey of this David Stepp patent but, in large part at least, protracted it from calls in other patents which bounded on the land proposed to be embraced in what is now the David Stepp patent. In order to make this David Stepp patent close, one must follow one of several different theories of probably equal dignity. The amount of acreage inclosed by the David Stepp patent will vary very considerably according to which theory one adopts in closing this patent. In the main, the David Stepp patent lies on the Chafin branch side of the ridge, but the calls of this patent up to the tenth corner carry the boundary line over onto the Burget branch side. In so doing, however, it incloses a considerable part of the John Burget patent of 1852 not only where it lies on the Burget branch side of the ridge, but also where it lies on the Chafin branch side. After the David Stepp patent had been issued other patents for other land on the Burget branch side of the ridge were issued to John Burget; one in 1855. David Stepp also had patented to him other lands which adjoined on the Chafin branch side of the ridge the David Stepp patent of 1855.

David Stepp died in 1870, devising to his son, William Stepp, certain land title to a part of which was derived through this David Stepp patent of 1855. William Stepp died about 34 years ago intestate. The appellants, Mary Farley and Martha Stepp, were his daughters and only heirs and distributees at law. As such they inherited the land, devised to their father by the will of David Stepp, their grandfather. In 1910, by partition deeds, they divided between themselves the land

they had thus inherited, Mary Farley taking the northern portion and Martha Stepp the southern portion of it. The Burget lands have come into the ownership of the appellees, the Lowes. In 1912, they executed a mining lease on this property to the appellee, the Borderland Coal Company. This coal company under its lease entered upon the property, mined coal therefrom, and cut timber from the surface which it used in its mining operations. The proof shows, without contradiction, that the Stepps and the Burgets and later the Lowes have for over sixty years regarded the center of the ridge, forming the watershed between Chafin's branch and Burget's branch, as the dividing line between the lands of the Stepps and those of the Burgets. The coal company, in its operations, mined the coal and cut the timber from the land on the Burget branch side of the ridge up to the center of that ridge. Contending that the David Stepp patent of 1855 ran over onto the Burget branch side of the ridge and embraced considerable land claimed by the Burgets and Lowes and mined by the coal company, and that such land was part of that devised by David Stepp to William Stepp and inherited by them from the latter, as hereinbefore set out, the appellants brought this suit to quiet their title and for damages for the coal mined and timber cut. The appellees defended on the ground that the Lowes owned the land in dispute under the Burgets, and, further, that if title to the land had vested in the appellants under their claimed chain of title, yet by the partition deeds mentioned, the land in dispute had been deeded to the appellant, Martha Stepp, who had made a contract with R. C. Kirk, whereby he was to finance her part of this law suit in return for which he was to have one-half of whatever recovery she got, and that thereby, under the champerty statute (Kentucky Statutes, section 211), she had forfeited whatever title she had in the land involved in this litigation. On the issues as thus formed, the trial court dismissed the petition of the appellants and they have appealed.

As stated, the calls of the David Stepp patent of 1855, if literally followed, will not close the patent. It was based on an inaccurate survey. Its acreage varys considerably, depending in what manner one closes the patent. Under one theory of the way to close it, very little of the land in dispute is embraced within it. However it is closed, it embraces a good deal of the John Burget patent of 1852, not only that part on the Burget

branch side of the ridge, but also on the Chafin branch side. For over 60 years, the Stepps and the Burgets and the Lowes have regarded the center of the ridge as the dividing line between their lands. Each family has helped the other fell timber on their respective sides of the ridge up to its center. It has been grazed up to that center by the respective families. It has at times and in places been cultivated to the center of the ridge by the respective families. Each family knew of the claim of the other family, and recognized and acquiesced in it. In so doing, the Burgets ceased to claim title under the Burget patent of 1852, which was prior in point of time to the David Stepp patent of 1855, to that part of the land embraced in this patent of 1852 and lying on the Chafin branch side of the ridge. The Stepps ceased to claim whatever land was embraced by the David Stepp patent lying on the Burget branch side of the ridge. A definite boundary was thus established for the Stepp patent, which, by its terms, was uncertain and ambiguous. Under these facts it is plain that the parties agreed on the center of the ridge as the division line between them, which agreement is abundantly supported by consideration; and, having been acquiesced in for more than 60 years, it is binding upon them and their privies. Stacy v. Alexander, 143 Ky. 152, 136 S. W. 150; Wallace v. Lackey, 199 Ky. 190, 250 S. W. 843; Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092.

It results, therefore, that the appellants have no claim to the land in dispute, for which reason the lower court correctly dismissed their petition, and its judgment in so doing is affirmed.