## Gotee, et ux. v. Feldpausch.

(Decided May 20, 1927.)

### Appeal from Daviess Circuit Court.

Boundaries—Where description in deed given for $100, by plaintiff to defendants, under agreement to straighten boundary line between two farms, was ambiguous, and no survey or effort to determine exact number of acres involved was then made, held that act of parties in staking out and building partnership fence on line so established, was a practical construction of the contract which was binding on the courts, notwithstanding line so established was not absolutely straight.

BARNES, SMITH & KIRTLEY and LOUIS I. IGLEHEART for appellants.

FLOYD J. LASWELL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Robert Gotee and his wife seek by this appeal to reverse a judgment for $225, recovered against them by the appellee, Margaret Feldpausch. The Gotees owned a farm in Daviess county on Panther creek. Just east of them was the farm of Margaret Feldpausch. On the line between the two farms there was an open road or lane, which ran for about one-third of the distance between them. This road was fenced on both sides, and one or perhaps both of these fences was hedge. The fence along the other two-thirds of the division line between the two farms was in need of repair. The parties were contemplating the repair of the fence. The Gotees pro-

posed to sell to Mrs. Feldpausch enough land to straighten the line.   She did not want to buy and made a counter proposal to sell them enough to straighten the line, and, according to the Gotees, she agreed to sell to them for $100 enough land to straighten the line from the end of this open road to the creek.   The $100 was paid, and the new line staked off from the end of the road to the creek, and the parties built a partnership fence on that line, and Mrs. Feldpausch made to the Gotees a deed conveying them this property:

"A certain tract or parcel of land situated in Daviess county, Kentucky, and bounded and described as follows, to-wit: Beginning at the northeast corner of the lands of Robert Gotee and Addie Gotee, running thence directly south 143 rods through the lands of Margaret Feldpausch to the southeast corner of Margaret Feldpausch's land and running thence in a northwestwardly direction with the lines of Robert Gotee and Addie Gotee, to a stake, and running thence northwestwardly to the point of beginning, containing about two acres more or less, it being the purpose of this deed to straighten the lines between the lands of Robert Gotee and Addie Gotee and the lands of Margaret Feldpausch."

The line upon which the new fence was built cut off from the property of Mrs. Feldpausch between two and three acres of which the Gotee's took possession.   They cleared it and now have it in cultivation.   Matters drifted along for about five years, when Mrs. Feldpausch had a surveyor measure the property embraced by the description above.   He returned this as a correct description of the property:

"Beginning at a rock corner to Mrs. Margaret Feldpausch's adjacent tract at Robert Gotee's original northeast corner; thence S. 8½ W. 2,415 ft. to a fence post on the north bank of Panther creek (originally a sugar tree corner) at R. Gotee's original S. E. corner; thence with the original line of Gotee and Feldpausch N. 26 W. 417 ft. to a stake at original corner of R. Gotee and M. Feldpausch; thence again with the original line N. 15 E, 2,084 ft. to the beginning containing 6.51 acres."

The description which these parties inserted in the deed, and which is the one first copied above, is ambiguous. It calls for a line beginning at the northeast corner of the Gotees and running directly south through the land of Mrs. Feldpausch. To run to her southeast corner, would take in, it seems to us, thirty or more acres of her land, and the line would run something like south 35° east and it would be much more than 143 rods long. To run the line directly south would take in about fifteen acres of her land, and would not touch either of her corners; so evidently it was intended to run to the southeast corner of the Gotees instead of Mrs. Feldpausch. The line as surveyed and established by the surveyor employed by Mrs. Feldpausch would give Gotee about six and one-half acres of her land. The proof shows this land to be white crawfish land, and to have been worth probably $20 an acre. Mrs. Feldpausch contended that the Gotees promised to pay her $50 an acre for the land cut off by the survey. They contended that they did not buy from her any particular number of acres or buy at any certain price per acre, but, on the contrary, agreed to pay her $100 for so much of her land as would be cut off by a line running from the end of the lane to Gotee's corner. Against this construction of the contract it is argued that this would not make the line between these lands absolutely straight. The Gotees say it was never intended to make the line absolutely straight, but to make it reasonably straight. The Gotees are supported in their construction of the contract by the fact that the parties staked this line off and built the new partnership fence at the point where the Gotees are now contending it should be.

In 13 C. J. 546, we find this:

"Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great if not controlling weight in determining its proper interpretation."

We find this supported by a vast number of authorities from all the states of this union, including many from this state. In addition to the authorities cited, we find other Kentucky authorities to the same effect:

"In the absence of positive proof of the terms of a contract, evidence of its construction by the

parties at the time and for so long a time thereafter
is entitled to great weight, and, in our judgment,
should be treated as conclusive here." Nield v. L.
& N. R. Co., 205 Ky. 676, 266 S. W. 351.

"In the interpretation of ambiguous and un-
certain contracts which have been executed, or
partially executed, there is no safer plan than to
adopt that construction which the parties them-
selves, in operating under the contract, have given
to it." Consolidation Coal Co. v. Gibbs, 190 Ky.
717, 228 S. W. 416.

Mrs. Feldpausch was evidently anxious to force the
Gotees to pay her $50 an acre for all of this land that
she could. The Gotees appeared to have no desire to
impose any hardship upon Mrs. Feldpausch, for in their
pleadings they offer to rescind the contract and to put
the fence back where it was.

The trial court found in favor of Mrs. Feldpausch.
These parties have construed this contract to be that
Mrs. Feldpausch was selling to the Gotees all the land
that would be cut off from her land by a line running
straight from the end of this lane to the southeast corner
of the land of the Gotees, and that the Gotees should pay
her $100 for that. They have paid her the $100, and they
and Mrs. Feldpausch have built a partnership fence on
the line they established. That was their construction
of the contract, and, in view of the ambiguity of the con-
tract, the court should have accepted their construction
of it.

In De Witt v. Buckley, reported in 38 N. J. Eq. 291,
the court had before it a contract for a division line be-
tween two farms, and that contract called for a straight
line to be so run as to give to each party the same amount
of land. One of the parties was contending that the line
should be run straight, regardless of its effect, while
the other contended it should be run so as to give each
party as nearly as may be the same amount of land, and
that court held:

"The complainant is entitled to a decree requir-
ing the line between the farms to be located in con-
formity to the contract—that is to say, that a new
line, as nearly straight as is practicable under the
circumstances, shall be established."

Thus the New Jersey court decreed that the provision for a straight line must yield to the other provisions of the contract, and we are convinced that in this case, the provision for a straight line between these two farms must yield to the construction the parties then placed upon it. Their construction then was that this contract meant this line must be straight from the end of the lane to the corner of the land of the Gotees on the creek, and for the land thus cut off the Gotees paid $100. No survey of the property was then made, nor any effort to determine the exact number of acres. It was not a sale of this land by the acre. The court should have so adjudged.

The judgment is reversed, and, on the return of this case, the trial court will enter a judgment accordingly.