# Mitchell Willis Coal Company v. Liberty Coal Company.

(Decided June 21, 1927.)

## Appeal from Perry Circuit Court.

Boundaries.—In contest over the proper location of a patent issued by the state, where all the original corners were gone and all parties who knew the actual location of the lines were dead, the agreed location acquiesced in for over 50 years by parties possessing the lands held determining; no more definite evidence being available.

W. A. STANFILL, FAULKNER & FAULKNER and J. W. CRAFT for appellants.

MORGAN, EVERSOLE & BOWLING for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On February 4, 1860, patent 33727 was issued by the state to Elhanan Combs for 150 acres of land in Perry county. On April 23, 1917, Elhanan Combs conveyed two tracts to Woodson Combs and others, from whom the land passed on January 4, 1920, by regular conveyances, to the Mitchell Willis Coal Company. It brought this suit on March 27, 1922, against the Liberty Coal Company, alleging that it had entered upon its land wrongfully and without right and mined therefrom a large quantity of coal, for which judgment was prayed. The two companies were both operating on adjoining lands. The Liberty Coal Company by its answer denied that the title to the property was in the plaintiff and alleged title in itself, both by grant and by adverse possession, by it and those under whom it claimed, for more than 30 years. A large amount of proof was taken, and on final hearing the circuit court entered judgment in favor of the defendant. The plaintiff appeals.

The case turns on the proper location of patent 33,727. First creek in Perry county runs into the Kentucky river; a mile or so below Second creek runs into it. These two creeks run practically parallel with a high ridge between them. Elhanan Combs lived on First creek a mile or so above its mouth. In early times Riley Hoskins settled at the mouth of the creek. Other persons settled over on Second creek and in the branches

making off from it toward First creek. In 1885, or about that time, a man named Horsley was buying coal land in Perry county and having it surveyed. Two of Elhanan Comb's sons assisted in these surveys. After the surveys were made Elhanan Combs executed a deed, in July, 1887, to T. P. Trigg, trustee, for the coal and coal privileges in 898.83 acres, particularly described in his deed. Jeff Fugate executed a like deed for 120.67 acres; William Fugate a like deed for 90.45; Francis Combs conveyed by a like deed for 227.80. These four deeds covered the land in controversy and the rights thereby conveyed passed by regular conveyance to the Liberty Coal Company on June 25, 1917, and it then entered on the land. The deed which Elhanan Combs executed in 1887 does not include the land in controversy, but it is included in the other deeds above named. The proof shows that Francis Combs, who held under Riley Hoskins in 1887, was living down near the mouth of First creek, and that between him and Elhanan Combs there was a line running across the creek to the top of the ridge from the rock at the spruce pine which was recognized by both of them as the division line. Fully 20 witnesses testify to this fact, including two sons and one son-in-law of Elhanan Combs, and this testimony is confirmed by a mass of evidence showing the actual occupancy of the land and the use of it, including old clearings and fencing. The patent as now located by the plaintiff lies below this line, and, though there are a number of witnesses testifying that Elhanan Combs claimed that his patent was located here, the great weight of the evidence sustains the defendant. The patent, as located by the plaintiffs, runs over the ridge and includes also part of the Fugate land. But there is like testimony that the top of the ridge was for many years recognized as the division line between them, and this testimony is sustained by like facts as to possession of the land and old clearings on that side of the ridge. The sale of this land in 1887 was notorious in the community. Much time was taken in making the survey. The deeds then made were plainly intended to cover the entire territory, and it cannot be reasonably doubted that when Elhanan Combs made his deed he knew what land the Fugates and Francis Combs were conveying; for the purpose of the survey was to obtain title to a contiguous body of land. Elhanan Combs not only then asserted no title to the land conveyed by the Fugates and Francis Combs, but stood by and allowed

them to collect the purchase money. In 1901 when the Virginia Iron & Coal Company purchased the property it had the land resurveyed. Combs definitely knew what land it was surveying and asserted no title. Mr. Jesse Morgan, who was examining the title for the purchaser, went to see Combs, and he told him that he did not claim any land below the rock at the spruce pine. Things went on as they had before. Combs had lived there then something like 50 years. In all that time there had been no dispute between any of the parties as to this land, and there was perfect acquiescence on all sides that Combs did not own below the line crossing the creek at the rock at the spruce pine. Thus things went along until 1917, when Combs was something over 80 years old, and he then made the deed under which the defendant now claims.

The question to be determined is the proper location of patent 33727 above referred to. As located by appellees it does not include the land in controversy. Two surveyors testify to this as the proper location of the patent, and there is other testimony confirming this. All the original corners called for in the survey are gone. All the parties who knew the actual location of the lines are dead. Under such circumstances the agreed location of the patent, acquiesced in by all the parties for over 50 years and until the death of everybody who knew the facts, should not be disturbed.

> "Acquiescence may become itself evidence of the true location of the land, or of a presumed agreement adjusting a disputed boundry line, though less in some instances than the period necessary to constitute adverse possession." 4 A. L. R. p. 128.

This rule has often been applied by this court under facts no stronger than those shown here.

> "When the parties to this transaction are dead, the actual location of the lines by them soon after they were made is the best evidence of the true location, when this location was acquiesced in until all of that generation had passed away." Wand v. Corbin (Ky.) 107 S. W. 753.

> "Uncertainty may now exist as to the true location of this corner when all the men are dead who located it; although there was no uncertainty at the

time the old surveys in question were made; and under all the facts we conclude that the circuit court properly entered a judgment in favor of Green. The location of the corner acquiesced in when those were living that knew the facts, should not be disturbed after their death, when many years have elapsed and time has obscured much that was then known." Ewell v. Green, 141 Ky. 23, 131 S. W. 1023.

"Appellant himself admits that for 30 years or more appellee and his father and persons acting for them had cut and removed timber from the land in controversy, yet he sat idly by all those years and took no steps to stop them or to assert his claim to the land until the death of appellee's father, and after the death of several other old residents of the vicinity. Not only so, but the evidence of several witnesses shows that during those years appellant himself recognized the sugar tree line as the extent of his boundary; during those years he sold timber from his land to a number of persons, and always directed them not to go below the sugar tree line, and at least one witness states that appellant had pointed out to him the sugar tree line as the correct line betwen him and Hammond." Wallace v. Hammond, 165 Ky. 382, 176 S. W. 1158.

The facts in this case are fully as strong as in any of those cited.

Judgment affirmed.