## Wallace et ux. v. Mounts.

March 24, 1942.

Stratton & Stephenson for appellants.

A. F. Childers for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This suit began as an action by Matilda Wallace and her husband against T. M. Mounts for trespass upon described land and the cutting and removal of timber of the value of $500, for which judgment was asked. Questions of title becoming involved, the case was transferred to equity. Judgment was rendered for the defendant and plaintiffs appeal.

The parties are cousins. Their grandfather, Michael Mounts, had owned the property of both parties and much other land. Part of that in dispute, Parcel No. 1, was included in a survey of July 24, 1854, and patented to him in 1855. He had acquired much adjacent land in those early days and though he disposed of part, if not all, of his original patent before he conveyed some of the adjoining land, reference was made to

the lines of the original survey in the deeds. In the division of his property among his twelve children (see Mounts v. Mounts, 155 Ky. 363, 159 S. W. 818), his son, Jackson Mounts, acquired title in 1869 to 300 acres, which embraces plaintiffs' land on Poplar Creek. He owned it for 42 years until 1911. By two intervening deeds the plaintiffs, Matilda and Isaac Wallace, acquired title to 148 acres in 1918, which they claim includes the disputed parcels. In the division, his son, Dave C. Mounts, father of the defendant, T. M. Mounts, acquired title to property adjoining on the west, by deed of April 4, 1872. It is described as being on the waters of Shallow Shoal Branch. The difficulties as to the common boundary arise over indefinite and conflicting descriptions in the deeds made long ago and the loss or obscuration of the monuments. The issues of the case particularly relate to a parcel of 28.8 acres of land, designated as No. 1, and a parcel of 27 acres bordering on Tug River, designated as No. 2. These may be roughly described as the top and bottom triangles, as in the letter "X," formed by the crossing of a winding ridge by a straight line called for in Michael Mounts' survey of July 24, 1854. Each party claims both parcels.

For many years this was wild and isolated land. Other than small parcels along the river and creeks out of which the inhabitants wrested a livelihood, it was of little use and value. And the owners, for this reason and perhaps because of their kinship, seem to have disregarded exactness in the lines even if they actually knew them. In recent years the surveys developed overlaps. As the land became more valuable for the timber and minerals, and particularly after the construction of the Norfolk & Western Railway across Tug River in West Virginia, recognition seems to have been taken of the overlapping lines. A spur track was built across the river and up Poplar Creek. It appears, however, that the coal has already been mined out and much, if not all, of the valuable timber removed. Indeed, the suit appears to be a controversy as much between their respective coal lessees as between the parties to the suit. Underlying the open controversy of the owners of the surface is an apparent contention of the lessee of one party that the lessee of the other has been guilty of trespass on its mineral rights and the removal of its coal for which damages may be sought.

There is contradictory evidence of the engineers as to the location of lines called for by the patents and deeds. And each of the parties produced witnesses who testified to conditions which had existed during the years that would seem to establish their respective adverse possession. Often the witnesses were indefinite and much of the testimony is incomprehensible to a stranger reading the record and endeavoring to analyze the numerous large detail and involved maps to which the witnesses referred—some to one map and some to another.

The circuit court found there was no evidence of trespass by the defendant upon Parcel No. 2 and declined to pass upon the title to it. It seems sufficient to say that we concur in the conclusion of fact and also in the decision not to pass upon the title to Parcel No. 2.

Poplar Creek flows northwardly into Tug River. West of and substantially parallel with the creek is a ridge from and beyond "Potato Hill" or "Tater Knob" and extending on down the river. On the other side of the ridge is Shallow Shoal Branch. Disputed tract No. 1 lies on the west side of the mountain or ridge down to and in part beyond the Left Fork of Shallow Shoal Branch.

To start with, the deeds from Michael Mounts to his sons, Jackson and Dave, are of such general and indefinite description that it appears impossible to locate exactly the line between the two tracts after the lapse of 70 years. The trees and stakes (if any were ever actually driven) have been long gone. In the division of their grandfather's land, it seems that Mrs. Wallace's father, Jackson Mounts, received land in the Poplar Creek watershed, and T. M. Mounts' father, Dave C. Mounts, received land on the other side of the ridge in the watershed of Shallow Shoal Branch. Jackson Mounts lived until about 1922 and Dave until 1931. The appellee received his title direct from his father in 1904. Three mesne conveyances are between appellants and Mrs. Wallace's father, Jackson Mounts, who divested himself of title in 1911. The two brothers, Jackson and Dave, doubtless knew what each was intended to receive in his deed from the father, but their conveyances to their descendants are almost as indefinite as are the deeds from their father. It seems to us that the problem of locating the line may be best solved by looking to the

line which each of the sons recognized as the common boundary. It does not appear that there was ever any definite or express agreement as to this boundary line, but we concur in the finding of the circuit court that there was an acquiescence in the top of the ridge as being the correct boundary. This is not dependent upon oral evidence but is established by leases and the conveyances which it may be assumed were not entered into carelessly. We may briefly note these documents. It will be understood that we are ignoring descriptions in these instruments as may be applicable to Parcel No. 2, which may or may not establish in one way or another a recognition of that boundary.

We look, first, to the record of recognition by appellants' predecessor in title, Jackson Mounts.

1. In January, 1901, he executed a "lease in fee simple" to John Rueger of "all the coal lying and being on the lands of the party of the first part, situate on the waters of Poplar Creek." This cannot be regarded as covering land on the other side of the ridge which is part of the watershed of Shallow Shoal Branch. The lease is said to have been abandoned, but it is the acknowledgment of boundary with which we are concerned.

2. In May, 1905, he sold certain timber to A. A. Mitchell "on the tributary of Poplar Creek, bounded as follows: On the west by D. C. Mounts; thence up the ridge between Barrenshee, Peter and Poplar Creek to Robert Chapman's line," etc.

3. In June, 1905, he executed a coal lease and conveyance to J. M. Mann of what is said to be 2,280 acres, described as being "all those several tracts, pieces and parcels of land situate on the waters of Poplar Creek," etc. The particular description calls for the beginning on the west at Dave C. Mounts' line; thence with it to the top of the ridge to Charles Mounts' line; thence with same "on around the ridge." This lease was assigned to the Majestic Collieries Company, which developed the property during the past 20 years. Their operations have been very extensive.

4. In May, 1907, Jackson Mounts conveyed the timber to the Majestic Collieries Company "on all those certain tracts * * * on the Poplar Creek of Tug River and its tributaries," with a particular description calling for the top of the ridge.

5. While not a conveyance by Jackson, what is more certainly a claim and recognition by him of what he owned is a quit-claim deed executed to him in February, 1909, by his brothers and sisters, heirs of Michael Mounts (except David C., who did not sign the deed although named as grantor), which calls for the top of the ridge as the boundary line. This deed is referred to in Mounts v. Mounts, supra. The purpose of it was to make certain that Jackson had been re-invested with title to his lands which had become involved by reason of the conveyance of his property to his mother to escape the possibilities of a judgment for damages as described in that opinion.

6. Finally, in December, 1912, after he had parted with the surface in 1911, in consideration of the payment jointly of $2,500 annually to himself, and at his death of $600 to his widow, out of royalties received from the Majestic Collieries Company, Jackson Mounts conveyed, by 11 separate deeds, to his 11 children, the coal and minerals and his royalties "in, on or over all the land on Poplar Creek." The description is the same as in the lease given above. It continues to define the boundary as the ridge or the top of the ridge between Poplar Creek and other creeks or the property of named persons.

Thus we have a repeated and continuing claim by Jackson Mounts of land on Poplar Creek and only up to the ridge. The coal leases are very persuasive. It is hardly likely that where so much of value was involved either party would have omitted this 28.8 acres and left it an isolated island, in a coal area of 2,280 acres. Furthermore, it is pretty well shown that his and the appellants' lessee, the Majestic Collieries Company, mined only to a point beneath the ridge.

On the other side of the case we have a continuing claim by Dave C. Mounts of the ridge as the line. (1) In April, 1902, he executed a lease to the Vulcan Coal Company of his property, which is described at length by metes and bounds. It defines the line, in part, as being "to a stake on top of the ridge at Jackson Mounts' line; thence with his line and the top of said ridge," etc. This company began development soon afterward and seems to have mined out the coal up to a point beneath the top of the ridge. It paid all royalties to Dave C. Mounts or his vendee, the appellee, T. M. Mounts, without ob-

jection being raised by the appellants or their predecessors in title. (2) In July, 1916, David C. Mounts deeded his property to his five sons, including the appellee, T. M. Mounts. In his conveyance the description refers to ''a knob known as 'Potato Hill' '' in the line, and ''thence running down the ridge between Poplar Creek and Shallow Shoal Branch to Jackson Mounts' line; thence running with said Jackson Mounts' line to Tug River below a mouth of Poplar Creek.'' This includes land that had already been conveyed by Dave C. Mounts to T. M. Mounts, in March, 1904, which also called for the ridge as the dividing line, at least so far as the disputed Parcel No. 1 is concerned.

The appellants, however, submit the oral evidence as to what Jackson Mounts said and did shows that he did not agree that the ridge is the boundary. As we understand it, that evidence relates to parcel No. 2 and particularly as to what was the starting point of the surveys and lines. The appellants seem to recognize the force of the descriptions of the common boundary of Parcel No. 1, contained in the several conveyances executed by Jackson Mounts and Dave C. Mounts, but maintain that there was no bona fide dispute between them nor any evidence of an agreement as to the boundary in settlement of a dispute. They are correct so far as to there being no direct evidence on these points. And we readily agree that where there is no dispute as to the true dividing line and there is no doubt of the superiority of the title of one of the owners as against the claims of the other, a parol agreement establishing a new boundary which results in one being given more land than he previously had, there being no mark or establishment of a definite line and no consideration for the cession of land by one owner to the other, is unenforcible. Amburgy v. Burt & Brabb Lumber Company, 121 Ky. 580, 89 S. W. 680; Howard v. Howard, 271 Ky. 773, 113 S. W. (2d) 434. Excepting that there appears to have been some lack of agreement as to a boundary between lands of the two brothers, the case of Holbrooks v. Wright, 187 Ky. 732, 220 S. W. 524, is, in part, exactly like the condition presented here. We do not have any evidence of an open dispute or expressed disagreement. Can it be said, however, as a practical matter that there is any material distinction? Here we have a general and indefinite description and a practical impossibility of ex-

act location on the ground. We also have recognition and acquiescence during the course of a long period between parties owning the respective adjacent lands, who acquired same by conveyance of their fathers and who undoubtedly knew and understood where the division line lay. If it be said that the absence of an express dispute prevents the application of the rule as to the parol settlement of disputed boundaries, undoubtedly there should be applied a rule of evidence of a practical construction of the conveyances in respect to the boundary line, and as well the rule of estoppel since the appellants and their predecessors for many years have treated the disputed parcel as belonging to the appellee, who, with their lessees, in privity with them, have acted upon that acquiescence. This is the principle upon which rests Hotze v. Ring, 273 Ky. 48, 115 S. W. (2d) 311, which is controlling and decisive of this case. See also Woodford v. Clay, Ky., 107 S. W. 269; Howes v. Wells, Ky., 110 S. W. 245; Jack v. Stepp, Ky., 110 S. W. 887; Vance v. Gray, 142 Ky. 267, 134 S. W. 181; Mosley v. Eversole, 148 Ky. 685, 147 S. W. 426; Farley v. Borderland Coal Company, 218 Ky. 779, 292 S. W. 303; Gotee v. Feldpausch, 220 Ky. 81, 294 S. W. 813; Mitchell Willis Coal Company v. Liberty Coal Company, 220 Ky. 661, 295 S. W. 987; Kenmont Coal Company v. Combs, 243 Ky. 328, 48 S. W. (2d) 9; Lewallen v. Mays, 265 Ky. 1, 95 S. W. (2d) 1125.

The judgment is affirmed.