## Brock v. Muse et al.

(Decided December 10, 1929.)

(As Modified, on Denial of Rehearing, January 28, 1930.)

294

KENNEDY & JONES for appellant.

DENTON & PERKINS and E. T. WESLEY for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This appeal involves a controversy over a line fence. The land of appellant, Brock, lies to the one side of an old 500 pole line, and the land of appellees, children of Minnie Muse, on the other side. There is no doubt that the line between the two farms, as shown by the records, was a line running north 31½ west 500 poles with two white oaks as a point of beginning.

There was an old rail fence on, or near, the line between the two farms which existed for many years, probably for nearly a half century. The proof in the case established beyond all question that this old rail fence was recognized by the adjoining landowners as the boundary between them, and that those on each side of the rail fence continuously claimed up to the fence and cultivated the land on their side of the fence. Those on each side for many years were agreeable neighbors without that belligerency that makes those who have line fences stir up trouble to the hurt of the neighborhood, in many instances with tragic results. The old rail fence was established as the line.

We deem it unnecessary to more than state the general rule applicable under such circumstances. Where a fence has been recognized by the parties as a division line between their lands, each holding, claiming, cultivating, and controlling the land up to the fence on his side for more than 15 years, the fence becomes the true division line, even though the line may have been originally located at a point on one side or the other of the fence.

The recognition of a fence as the division line under circumstances shown to exist by the facts in this case is conclusive on the parties residing on each side of the line, and, although a mistake may have been made in the location of the fence, it is too late to correct it after the lapse of 15 years. The recognition and acquiescence of one preceding owner may be tacked on the recognition and acquiescence of another to establish that the fence has been recognized for 15 years or more. These general principles are discussed and settled in the following cases: Nelson v. Alford, (Ky.) 117 S. W. 250; Hay v. Pierce, 144 Ky. 768, 130 S. W. 941; Peters v. Hendricks et al., 225 Ky. 722, 9 S. W. (2d) 1076; Cornillad v. Fisher, 228 Ky. 104, 14 S. W. (2d) 382.

Where the parties on each side of a division fence have recognized it as the true line, as above indicated, for 15 years or more, in controversy over the location of the line it is unnecessary for the parties to rely on their paper title and trace it back to the commonwealth. Hopkins v. Layne et al., 207 Ky. 275, 269 S. W. 336.

If nothing else had happened, we would now be at the end of the case, and the parties would have to be satisfied with the old fence as the line between their lands, but about 10 years before the institution of the suit by the appellant against appellees, the adjoining landowners, by agreement, undertook to replace the old rail fence with a new wire fence. Mr. McKenney at that time owned the land which afterwards became the property of Muse, and appellant was then the owner of the land which is now his. The old rail fence had become decadent, and Mr. McKenney and the appellant, in a neighborly sort of way, concluded that they would replace the fence with a better one. The old fence was not as straight as it could have been made, and it was suggested that the new fence should be more nearly straight. Neither party knew the exact location of the true boundary line between them. It is shown that McKenney had said that the line ran through the premises of Brock. Brock appears to have been an agreeable person, and he made no particular complaint, and probably no complaint at all, because McKenney thought the line ran over on the Brock side of the fence. By agreement one of them built his part of the fence, and the other built the part that had been allotted to him. Generally the new fence was within the old fence row, but there were divergencies,

and at some points the new fence was a few feet from the old fence row. That is to say, the evidence indicates that the new fence, at some point, was on the Muse side. After Muse became the owner of the land she, probably through her husband and some of her grown sons, began to make complaint about the division fence. They did not claim that the old rail fence was the line, but their contention was that the true line was about 30 feet over on the Brock side, and that is what they are contending for. They gave Brock a notice requiring him to move his fence. He failed to do so when the appellees, or some of them, went to the fence, hitched mules to is, and dragged down 64 panels. The appellant instituted suit to recover damages for the alleged unlawful acts of appellees.

At the conclusion of the evidence the trial court gave a peremptory instruction directing the jury to return a verdict in favor of appellees. This instruction was bottomed on the idea, so it is made to appear in the briefs, that there was no controversy over the division line at the time the new fence was erected, and that the part torn down by appellees was on their side of the old division fence. The court applied a rule, which is well known, that a division line cannot be established by parol unless it is in settlement of a controversy or disagreement between the adjoining landowners over the location of the line. That rule is to the effect, as we will show later on, that, where there is no dispute over the location of the line between the tracts of land, the giving away by one party of a part of his land is without consideration. If, however, there is a disagreement, or controversy, and the line is agreed upon and acquiesced in by both parties for some time, the location of the line so made is binding on all parties.

The rule is probably as well stated in Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092, 1093, as in any opinion. It was there said:

"While the validity of parol agreements to settle disputed boundaries was long resisted on the ground that, in effect, they passed the title to real property without the solemnities required by the statute, it is now settled that, where the dividing line is uncertain and there is a bona fide dispute as to its location and the parties agree on the dividing line and execute the agreement by marking the line or building a fence thereon, such an agreement is not prohibited by the

statute of frauds, nor is it within the meaning of the provisions of the law that regulate the manner of conveying real estate. The reason for the rule is that the parties do not undertake to acquire and to pass the title to real estate, as must be done by written contract or conveyance. They simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being simply by something agreed on to identify their several holdings and to make certain that which they regarded as uncertain.''

Many of the texts and opinions are cited in support of the above quotation. Before a boundary line may be established by parol it is necessary that two things concur; that is, that the correct location of the boundary line is uncertain, and that there is a bona fide dispute as to its location.

A late case dealing with the same question is that of Black et al. v. Napier et al., 212 Ky. 315, 278 S. W. 834.

It is not sufficient to merely establish by the proof that the boundary was uncertain, but the proof must go further and establish that there was a disagreement or a bona fide controversy between the parties before parol agreements followed by acquiescence for less than 15 years may be recognized as binding on the parties. Here the boundary may have been uncertain at some time, but the rail fence had become the boundary by agreement and acquiescence, and there was no controversy as to its location. The bona fide controversy over the location of the line need not be one of violence. It is sufficient if one party thinks that the line is in one place and the other party thinks it is in another. No such condition existed. Both parties recognized that the rail fence was the true line, and when the new fence was erected there was not a bona fide controversy as to the line's location. It follows, therefore, that the appellees were not trespassing upon the lands of appellant when they destroyed the fence, because it appears to be agreed that the fence destroyed was not located approximately on the line as indicated by the old rail fence, but on appellees' side of it.

This is without prejudice to any equitable right that appellant may have to quiet his title.

Judgment affirmed.