## Kenmont Coal Company et al. v. Combs et al.

(Decided March 4, 1932.)

JESSE MORGAN, LEWIS A. NUCKOLS and D. D. HULL, JR., for appellants.

WOOTTON & WOOTON for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

Mason Combs was the father of Clinton Combs and Washington Combs. He divided his land between them.

Clinton Combs settled on Carr's fork of the North fork of the Kentucky river; Washington Combs settled on Buckeye creek, which runs into the Kentucky river about half a mile below Carr's fork. Sam Napier married a daughter of Washington Combs. In 1844 he obtained a patent from the commonwealth for a tract of land on Buckeye. The patent called for 500 acres, but if run out according to its calls the patent included three times as much land. On March 6, 1848, Sam Napier conveyed the land to Washington Combs by deed according to the calls of the patent. Louvina Evans was a daughter of Washington Combs. On November 27, 1867, he gave her a bond for title for the land on Buckeye. Her son Alvin Evans, to whom she assigned the bond, lived with his mother, and on November 6, 1881, Washington Combs executed to Alvin Evans a deed for the land. In the deed from Napier to Washington Combs the land is described as follows:

"Beginning on the south side of a branch known by the name of Buckeye on a beech and sourwood; thence west 40 poles to a stake; thence N. 23 E 430 poles to a stake; thence N 29 W 180 poles to a stake; thence N 80 E 370 poles to a stake; thence S 13 E 125 poles to a stake; thence S 18 W 220 poles to a stake; thence S 28 E 132 poles to a stake; thence S 28 W 556 poles to a stake; thence N 143 poles to the beginning containing five hundred acres be the same more or less, together with appertaining."

In the title bond to Louvena Evans the land is described as follows:

"Beginning at a conditional line made between Washington Combs and Jefferson Combs; thence running each way across the creek as far as my patents covers; thence to run up the creek on both sides to a small drain that runs into said creek at the lower end of the Jesse Bottom, containing 250 acres be the same more or less."

In the deed from Washington Combs to Alvin Evans the land is described as follows:

"Situated, lying and being in Perry County on the North Fork, waters of Ky. River, being patents No. 5676 and 8712 surveyed in the name of Samuel Napier and ——————— from the Registers

Office 15 May 1845 & 9 of Aug. 1846, (except the land embraced in said patents situated on Date of Carr's Fork,) containing in all 350 acres be the same more or less.''

The patent No. 8,712 was only for 50 acres and is not material in this controversy. On May 1, 1915, Alvin Evans conveyed to the Virginia Iron, Coal & Coke Company all the land he claimed on Buckeye, and in this deed the land is minutely described.

Clinton Combs on February 9, 1859, took out a patent for 200 acres, which conflicts with the Sam Napier 500-acre patent. Clinton Combs died in the year 1900. Washington Combs died some years before. There was never any trouble between them as to this land. In March, 1922, appellees, who are the descendants and heirs at law of Clinton Combs, brought this action against the Virginia Iron, Coal & Coke Company and the Kenmont Coal Company and others claiming under them, alleging that they owned the 200-acre survey of Clinton Combs, and that the defendants had trespassed upon it and cut a large amount of timber from it, of value $1,633, for which they prayed judgment and damages. The defendants filed answer denying the title of the plaintiffs to the land, setting up title to it under Alvin Evans and alleging Evans possession of the land by him and those claiming under him for more than fifteen years before the action was brought. The issues were made up. A large amount of proof was taken. By consent of parties the case was transferred to equity. The matter in controversy is about 40 acres of land lying within the 200-acre survey of Clinton Combs and not within the 500-acre survey of Sam Napier, if located as appellees claim it should be located. On final hearing the circuit court entered a judgment in favor of the plaintiffs for the land in dispute, but entered no judgment for the value of the timber taken, on the ground that there was not sufficient evidence as to the number of trees cut or their value, to warrant a judgment. From this judgment the defendants appeal, and the plaintiffs prosecute a cross-appeal.

In Combs v. Virginia Iron, Etc., Co., 106 S. W. 815, 32 Ky. Law Rep. 601, decided January 10, 1908, this court had before it the proper location of the Sam Napier 500-acre patent. In that case it was shown that the plat accompanying the survey showed that the line S 18 W 200 poles should read S 81 W 200 poles, and it

was held under the proof in that case that the patent should be so located. But that was a controversy over the title to land on Date branch, a tributary of Carr's fork. The controversy here is over land on Buckeye. It will be observed that in the deed which Washington Combs made to Alvin Evans in 1881 there is this exclusion: "Except the land embraced in said patents situated on Date of Carr's Fork." The land so excluded in that deed was the thing in controversy in the former case, and Alvin Evans was not a party to that action.

The plat and the other proof before the court, on which that decision rests, are not in the record here, but, conceding that the patent should be located as there adjudged, it is clear from the evidence that it was not so located by the parties in 1881 when Washington Combs conveyed the land to Alvin Evans; for the patent so located does not include the land on Date branch, and, if the parties had then so understood, the exclusion of this land in the deed was unnecessary. The evidence clearly shows that Alvin Evans and his mother lived on the land, claiming it as their own from 1867 until he sold it to appellants in 1915. He had a well-marked line all around the land he claimed. These marks were old and well defined in 1910, and included the 40 acres in controversy. When his son Brownlow Evans grew up Alvin Evans caused him to settle on Buckeye within the calls of the 200-acre survey of Clinton Combs. A little later he settled Ballard Evans, another son, within this survey above Brownlow's place. They built homes, cleared lands, and set out an orchard and lived there for some years; just how long does not appear. But the orchards were there in 1910 and the settlement looked old. Alvin Evans also settled his son-in-law, Jim Combs, up near the head of Buckeye creek. He built a house, made a clearing, and lived there some years. All of this was within the well-marked boundary which he claimed, and within the calls of the patent, if the calls are followed literally. Alvin Evans' own house was within the 500-acre survey and not far from the line of the Clinton Combs' 200-acre survey. Alvin Evans not only settled his two sons and his son-in-law on this land and within the boundary he claimed, but he cut timber from time to time on the land in dispute. Two of the sons of Clinton Combs bought part of this timber from him, and, after buying it, sold it to another son of Clinton Combs. The

parties lived nearby. They were relatives, and the fact is undisputed that during all these years there was no dispute about the title to this land and no objection to anything Alvin Evans and his people did. He was living within his marked boundary. His claim to this marked boundary was asserted not occasionally but continuously, and the court cannot escape the conclusion that his claim to this marked boundary was acquiesced in by Clinton Combs and his descendants. An adverse possession of fifteen years defeats a right of action by the title holder. The proof here clearly shows that for more than thirty years Alvin Evans and those claiming under him were in adverse possession of the land claimed by him to the extent of his well-marked boundary to which he claimed under his deed, and under the deed from Napier to Washington Combs. The boundary given in these deeds, he clearly so located.

No rule is better settled than that the actual location of boundary controls; where there is a conflict between the course and distance and recognized objects establishing the boundary lines of a survey, calls and distances must yield to marked lines and natural objects called for in the survey and clearly identified. Cowan v. Fauntleroy, 2 Bibb, 261; Thornberry v. Churchill, 4 T. B. Mon. 29, 16 Am. Dec. 125; Baxter v. Evett's Lessee, 7 T. B. Mon. 329; Shackelford v. Walker, 156 Ky. 173, 160 S. W. 807; Rock Creek Property Co. v. Hill, 162 Ky. 324, 172 S. W. 671. The actual location of a deed may be satisfactorily established, not only by the natural objects found on the ground, but by the fact. that all the parties who knew the facts and were interested in the land located the deed in a certain way or acquiesced therein. It is clear here under the evidence that Washington Combs and his vendee Alvin Evans located the deeds in question so as to include the land in controversy, and unquestionably under the evidence Clinton Combs, and his children acquiesced in this location of the deed. The controversy as to the location is all of recent origin, and unquestionably Alvin Evans and those claiming under him claimed up to the marked line shown along the ridge in question. After more than thirty years' acquiescence in the location of the deeds by Washington Combs and those claiming under him, the heirs of Clinton Combs cannot be heard now to complain that this was not the proper location of the deed. Time obscures all things, and facts that

might be clearly shown fifty years ago may be incapable of proof now, when all the men of that generation have passed away. Hall v. Pratt, 142 Ky. 561, 134 S. W. 900.

After the deed was made to Alvin Evans in 1881, he, as shown above, held the land to a well-marked boundary, and settled two of his sons within the 200-acre survey of Clinton Combs, made clearings, and set out fruit trees there and so held the land until he sold out in 1915 or over thirty years, as shown by the age of the clearings and other like facts. When living on his tract and claiming to the extent of his marked boundary he made the settlements within the Clinton Combs survey, his actual adverse possession extended to all of that survey lying within his marked boundary to which he claimed, and there is no proof of any break in this possession thereafter, and no showing that any one then held the land or disputed his right to it. He had acquired by adverse possession the title to the land, though the lines he claimed were not the lines of the patent if properly located, Fox v. Hinton, 4 Bibb 559; Taylor v. Buckner, 2 A. K. Marsh. 18, 12 Am. Dec. 354; Whitley County Land Co. v. Lawson, 94 Ky. 603, 23 S. W. 369, 15 Ky. Law Rep. 401; Everidge v. Martin, 164 Ky. 497, 175 S. W. 1004; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E. 629; New York-Kentucky Oil & Gas Co. v. Miller, 187 Ky. 742, 220 S. W. 535; Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S. W. 329.

Judgment reversed, and cause remanded for a judgment dismissing the petition.