## Lewallen v. Mays.

(Decided June 19, 1936.)

2

TYE, SILER, GILLIS & SILER for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The title and possession of about one-half acre of land are involved in this action.

Original surveys and patents were made in the name of Andrew Evans to the land of which the one-half acre is a part, or surrounding it, if it is not a part of the boundaries embraced in the patents. Nevertheless, the parties agree that Lewallen's land lies wholly outside of the Evans patent. His farm is on the south side of Polar creek and the Mays' farm on the north side.

The boundary of land to which Lewallen asserts paper title is contained in a deed dated the 25th day of April, 1890, and executed and delivered by the master commissioner of the Whitley court of common pleas to John W. Faulkner, Daniel Faulkner, and Joe Ed. Faulkner, in an action to divide the land of John Evans among his heirs, and another deed dated the 14th day of June, 1898, from Faulkners to Lewallen. The disputed line as it is contained in these deeds, is "N. 45 E. 10 poles crossing the creek to two sycamores on north bank of creek; thence up same N. 69 E. 32 poles to a beech and elm at the mouth of the branch near a road." The boundary of land, the title to which is claimed by the Mays, is contained in a deed from William Evans and others to Ren and James Teague, dated the first day of May, 1866. James Teague, by a deed dated the 7th day of August, 1877, conveyed his

half interest therein to Green C. Teague. On March 22, 1910, G. C. and Ren Teague conveyed the same to James Teague, a son of J. C. Teague. James Teague was adjudged a bankrupt and his trustee in bankruptcy conveyed the same to Ren Teague and Charles Teague on October 15, 1923. Ren Teague conveyed a portion of his half interest on August 18, 1925, to Charles Teague. On the same date, Charles Teague conveyed his half interest in the remaining portion to Ren Teague. Ren Teague on the 2d day of March, 1926, conveyed the entire tract to Garrett and Hila Teague. Charles Teague and wife on the 6th day of May, 1926, conveyed one-half of the land to Garrett and Hila Teague. Green Teague and wife conveyed a portion of the farm on November 11, 1927, to John and Amanda McCreary, and on the 2d day of July, 1929, John McCreary and wife conveyed the same land to Clem Mays, the father of the Mays heirs who are now parties to this action.

These deeds call for a line beginning at two white oaks on the south bank of the creek, "thence N. 45 E. 10 poles, crossing said creek to two sycamores on the north bank of the creek; thence, with the same, N. 69 E. 32 poles to a beech and elm at the mouth of the branch." This is the identical line called for in the title paper of Lewallen. The disputed line is a line from the two sycamores on the north bank of the creek to a beech and elm at the mouth of a branch. The difference between the readings of these lines in the deeds of Lewallen and the Mays heirs is, Lewallen's runs from the two sycamores "thence up same (creek) N. 69 E. 32 poles." In the Mays deed, from the two sycamores, it reads, "with the same (creek) N. 69 E. 32 poles."

It is the contention of Lewallen that by his deed the proper running of the line between the two fixed objects is to run a straight line from one object to the other, and that the word "up," as it is used in his deed, authorizes or requires the surveying of the line between the two fixed objects without regard to the meandering of the creek.

The Mays heirs claim that the words "with the same" in their deed authorizes and requires a running of the line from the two sycamores on the north bank of the creek, with "the meanderings of the creek on

the north side to the beech and elm at the mouth of the branch''; and that this justifies the disregarding the call N. 69, E. 32 poles. Lewallen also insists that these calls in the deeds should be construed as running from the two sycamores with the top of the north bank of the creek as it was deeded in 1866, which was on a degree at N. 69, E. 32 to the mouth of the branch.

To substantiate this insistence he cites us to the fact that ''the call N. 69 originated as a call in the survey made by Andrew Evans on June 16th, 1926, and which was carried into a patent to Andrew Evans, the survey and patent being from a forked sycamore to Poplar Creek, or thence N. 69 E. 32 poles to an elm and beech.'' It is his insistence that since neither the Evans survey nor the patent calls ''with'' the creek or ''with'' the meandering of the creek, it was evidently the intention of the parties not to write the deed of 1866, the commencement of the Mays' title, so that the line would not run with the call of the patent.

On this point he cites to us Sanders v. McCracken, Hardin (3 Ky.) 258; Fleming v. Kenney, 4 J. J. Marsh. 155; Carter v. Elk Coal Co., 173 Ky. 378, 191 S. W. 294, 300; Gibson v. Madden, 229 Ky. 273, 17 S. W. (2d) 263, 264.

In Sanders v. McCracken, the rule is stated that a deed calling to ''run to the creek, and down the creek, with the meanders, and binding thereon,'' conveys ''no title to the channel of the stream or bed of the creek.''

In Fleming v. Kenney, it is stated that a call '' 'beginning on the bank of the creek'; 'thence up the creek with its meanders,' '' means that the margin of the creek is the boundary.

In Carter v. Elk Coal Co., we said:

''When the course and distance in the description calls for a straight line between two established corners, although this line may run down a stream or down a mountain or spur or ridge or other natural boundary, the line must be run according to the description of the deed or patent and on a straight line between the permanent objects mentioned as corners. * * *

''When, therefore, it is apparent that the de-

scription binding on the creek forms no part of the boundary, as particularly describe in the deed, and cannot be conformed to by complying with the express calls of boundary, it seems pretty clear that it should be considered as yielding to the more special specification of boundary.''

In Gibson v. Madden the line between adjoining lands was ''thence with said line up the creek to the beginning.''

It was our conclusion that the expression ''up the creek'' should be disregarded and the line should be located as straight from the two fixed objects named in the deed. The basis of this holding was, former deeds call for a straight line without calling ''up the creek.''

In the present case, the Andrew Evans patent of 1826 designated this line as ''N. 69 E. 22 poles from a forked sycamore to the beech and elm,'' and made no reference to the line running with the creek. The above authorities sustain the view that Lewallen's and the Mays' deeds should be construed as running not up or with the creek, but as a straight line from the sycamores to the beech and elm.

Leaving aside Lewallen's and the Mays' paper title and the surveys made in accordance therewith, an examination of the record for ourselves convinces us that Lewallen's and the Mays' title to the disputed fraction of an acre should be determined from the verbal testimony to be a line from the sycamores to the beech and elm as made and recognized by the adjoining landowners and their actual possession thereunder of the disputed land.

The ancestors of the Mays' heirs acquired title under the deeds of the dates already stated herein. The uncontradicted testimony in behalf of Lewallen establishes that since 1866 the channel or bed of the creek has changed to its present location.

It is likewise established that for more than 53 years before this action was brought, a rail and picket fence was erected and maintained by Lewallen and those under whom he claims title, and the Teagues under whom the Mays heirs claim title on practically a straight line running from the two sycamores on the

north bank of the creek to a beech and elm at the mouth of the branch near a road, the same line called for in the deed of Lewallen. For this period of 53 years, Lewallen and those under whom he claims title were in the actual, open, visible, and continuous possession of the tract of land covered by his deed, claiming the same to a well-marked and well-defined boundary, including the fence running from the two sycamores to the beech and elm at the mouth of the branch. Lewallen acquired title in 1898 and farmed the land on his side of the creek, during which time some member of the Teague family was the owner in the open and continuous possession of the Mays land, claiming it running from the two sycamores to the beech and elm at the mouth of the branch. James Teague, Charles Teague, and Garrett Teague deposed that their father, J. C. Teague, and Ren Teague, owned the Mays land at the time of their birth and continuously thereafter until they disposed of the same by the deeds hereinbefore referred to, and that thereafter some other member of the Teague family owned and occupied the Mays land until it was deeded to McCreary; and during all that period of time, the fence was in existence and that it was recognized as the line between the Lewallen land and the Mays land, and that the ownership and possession during that time, of Lewallen and those under whom he claims title, were conceded by their father and uncle and themselves. Garrett Teague testified that before he sold and conveyed the Mays land to McCreary, he pointed out to him the line between the two sycamores and the beech and elm as the correct line between the Lewallen land and that which he was conveying to McCreary. James Teague thought he bought the farm in 1910, and it was sold in 1923, by his trustee in bankruptcy, and a few years before it was sold by his trustee, he moved a part of the fence that ran from the sycamores to the beech and elm. The fence during the period of time Lewallen owned the land was in existence for about 22 years, during which time he was claiming the disputed land under his deed to the fence— a straight line from the two sycamores to the beech and elm—and during this 22 years he resided on and had actual possession of the land contained in the deed to a well-defined boundary including the disputed land. After the fence was removed by James Teague, the

fence line remained distinct and well-defined up to the bringing of this action. The Teagues and Lewallen testified that during the period of time they respectively owned the land on each side of the fence, Lewallen entered upon the disputed land, cleaned it off and kept it cleaned off so that it would not cause water from the creek to wash away or destroy his banks and performed such acts of ownership continuously after he acquired title to the boundary occupied by him. Lewallen testified that he consented for one of the Teagues to cultivate the disputed land at different times and the Teagues corroborate his statement in this respect.

The evidence fairly shows that Lewallen and those under whom he claims title were in that character of adverse, open, continuous possession of the disputed land, as to bring their title by adverse possession within the rule stated in Singleton v. Trustees, 10 S. W. 793, 10 Ky. Law Rep. 851; Davis v. Davis, 211 Ky. 711, 277 S. W. 1025; Morris v. Thomas Forman Co., 206 Ky. 191, 266 S. W. 873; Webbs v. Hynes, 9 B. Mon. 388, 50 Am. Dec. 515; Britt v. Houser, 171 Ky. 494, 499, 188 S. W. 628.

Land claimed to a well-defined boundary such as a fence, as in this case if the possession thereof is open, notorious, adverse, and continuous for a period of 15 years or more, it is sufficient to sustain the claim of title by adverse possession. Abbott v. Perkinson, 144 Ky. 495, 139 S. W. 745, Ann. Cas. 1913 A, 747. And "where a fence has been recognized by the parties as a division line between their lands, each holding, claiming, cultivating, and controlling the land up to the fence on his side for more than 15 years, the fence becomes the true division line, even though the line may have been originally located at a point on one side or the other of the fence. * * * The recognition and acquiescence of one preceding owner may be tacked on the recognition and acquiescence of another to establish that the fence has been recognized for 15 years or more." Brock v. Muse, 232 Ky. 293, 22 S. W. (2d) 1034, 1035.

These general principles are discussed and settled in the following cases: Nelson v. Alford (Ky.) 117 S. W. 250; Hay v. Pierce, 144 Ky. 768, 139 S. W. 941; Peters v. Hendricks et al., 225 Ky. 722, 9 S. W. (2d)

1076; Cornillaud v. Fisher, 228 Ky. 104, 14 S. W. (2d) 382.

Where the parties on each side of a division fence have recognized it as the true line, as above indicated, for 15 years or more, it is unnecessary for the parties to rely on their paper title and trace it back to the commonwealth. Hopkins v. Layne et al., 207 Ky. 275, 269 S. W. 336; Brock v. Muse, supra.

The line between adjoining lands, called for in the deeds as bounded by a water course, though the bed thereof may change, will be regarded as the proper line and the land will be considered as respectively in the actual possession up to the boundary line where it ran at the time the conveyances were executed. Degman v. Elliott, 8 S. W. 10, 9 Ky. Law Rep. 982, 983; Vaughn v. Foster, 47 S. W. 333, 20 Ky. Law Rep. 682. If the parties owning the adjoining land agree on the location of a division line between their lands and thereafter recognize and treat it as a true division line, it will be regarded by the court to be where it has been so recognized for 15 years. Wm. Ward v. Simon Kenton, Sneed Ky. Dec. 3; Kenmont Coal Co. v. Combs, 243 Ky. 328, 48 S. W. (2d) 9, 11.

In the Combs Case the controversy as to location of the division line, like that in the present one, was of recent origin, and one of the parties there claimed ownership to a marked line along a ridge. Of this we said:

"After more than thirty years' acquiescence in the location of the deeds by Washington Combs and those claiming under him, the heirs of Clinton Combs cannot be heard now to complain that this was not the proper location of the deed. Time obscures all things, and facts that might be clearly shown fifty years ago may be incapable of proof now, when all the men of that generation have passed away. Hall v. Pratt, 142 Ky. 561, 134 S. W. 900."

It is our conclusion that after 30 years' acquiescence in the location of the line called for in the deeds of Lewallen and the predecessor's title of Mays, neither such acquiescing owners nor their vendees can complain that the line claimed by Lewallen was not the

line of the deeds or patents if properly located. See iases cited in Kenmont Coal Co. v. Combs, supra.

The evidence showing the existence of the fence running on practically a straight line from the two sycamores to the beech and elm at the mouth of the branch, and the fact that the adjoining landowners recognized this fence and straight line to be their correct division line, for more than 30 years, even though Lewallen's deed and those under whom he holds title did not embrace the disputed land, and even though the Mays' deed and those under whom they claim title, includes it, Lewallen was at the institution of this action, the owner of it by reason of his adverse, open, continuous possession.

It is patent that the trial court erroneously decided that the Mays' deed embraced the disputed land and that Lewallen's did not, and improperly disregarded the evidence establishing Lewallen's title by adverse possession and the principles controlling the same as herein reiterated.

For this reason, the judgment is reversed, with directions to enter a judgment in accordance with the prayer of Lewallen's petition and for proceedings consistent herewith.