## Watlington et al. v. Kasey et al.

Jan. 22, 1943.

R. Davis McAfee and Ewing L. Hardy for appellants.

Robert O. Trent and Walls & Kincheloe for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This action was brought by the widow and heir-at-law of Nat H. Watlington against Percy L. Kasey and G. O. Haynes, to determine the ownership of a small strip of ground 16 feet by 300 feet located in the Park Addition to the town of Hardinsburg, and to determine the location of a 10 foot alley extending between the properties of plaintiffs and defendants. The chancellor's judgment was in favor of the defendants and the plaintiffs prosecute this appeal.

On October 18, 1912, Nat H. Watlington and wife conveyed to John N. Akers 10.5 acres of land rectangular in shape, which was surveyed at the time the deed was made. Akers immediately subdivided the property in 43 lots, all of which were 50 feet wide, except numbers

22 and 23 on the southeastern end, and he recorded a plat of his subdivision in the county court clerk's office soon after recording his deed. Twenty-two of these lots front on Park Avenue, the remaining 21 on Woodland Avenue, with a 15-foot alley running parallel with the two avenues which separates the two groups of lots and a 10-foot alley separating the subdivision on the northwest from the remaining Watlington property.

In 1918 a house was moved to the southwest corner of lot No. 1, which together with No. 43 just behind it were purchased by defendants in 1936. They desired to improve the property in the spring of 1938 by adding a 16-foot extension to the house on the northwest side and convert it into a filling station. Not being certain of their property line, they and James Watlington employed R. M. Basham, county surveyor of Breckinridge County, to locate the boundary lines of their lots. After making the survey Basham reported defendants could extend their building 16 feet on the northwest without encroaching on the alley adjacent thereto as shown on Akers' plat.

When defendants erected their addition, the Watlington heirs instituted this action averring defendants had obstructed the 10 foot alley, encroached 6 feet on plaintiffs' property, damaging them in the sum of $500, and they asked an injunction to require defendants to remove the addition from the alley and from plaintiffs' property. Defendants' answer traversed the petition, and by way of counter-claim they averred that plaintiffs had wrongfully fenced the alley as part of their land, were asserting adverse claims to defendants' land and maliciously had erected obstructions in front of defendants' filling station to their damage of $1,000. Subsequently plaintiffs dismissed their petition, replied to the answer and counter-claim as amended, and the issues were tried as raised by the counter-claim and the reply thereto.

The solution of this controversy lies in correctly locating the beginning point of the survey made of the 10.5 acres in 1912, when the Watlingtons conveyed it to Akers. The description in that deed recites: "Beginning at a stone in Geo. Squires' and railroad right-of-way line." The record shows the Squires lines is well established; that the railroad right-of-way is just south of Park Avenue and the railroad was built in 1890 and that the

Watlingtons' grantor had conveyed some land to the company for right-of-way purposes.

Both of defendants' surveyors, R. M. Basham and C. M. Payne, used as the beginning corner of their surveys the point where the Squires line intersects the railroad right-of-way, and by making a correction or two in the courses of the calls in the deed from Watlington to Akers, they were able to follow the calls as contained in the deed and their surveys closed. The only material difference in the courses in the two surveys made by defendants' surveyors from the courses used by plaintiffs' two surveyors, was in the last call. Defendants' surveyors changed this course from S. 32 to S. 42 in order to close their surveys, since the course S. 32 would not have closed, but would have entered the railroad right-of-way and gone across the tracks. Defendants' surveyors were of the opinion that a typographical error was made in writing the deed from Watlington to Akers, or such an error was made by the original surveyor in writing a "3" for a "4" in this last call in his field notes when the original survey was made in 1912, or else by the county court clerk in recording the deed. It is evident the surveyors for defendants correctly changed this last call from S. 32 to S. 42 since it is an elementary rule that courses and distances give way to natural objects, and one must go from the last call to the beginning corner regardless of courses and distances. Simpkins' Adm'r v. Wells, 42 S. W. 348, 19 Ky. Law Rep. 881; Fordson Coal Co. v. Bowling, 238 Ky. 221, 37 S. W. (2d) 69.

The plaintiffs' two surveyors, John and George Wilson, used as their beginning corner a point 39 feet in the railroad right-of-way which was 30 feet from the north line of that right-of-way and 9 feet south of the tracks. This caused them to stop their first line 39 feet south of a stone in a fence corner and caused them to omit Woodland Avenue, a 25-foot street upon which the lots of the subdivision fronted on the north. Then the Wilsons in running their second line did not follow it the full 1155 feet called for in the deed from Watlington to Akers. John Wilson ran this line only 1128 feet, while George ran it 1136 feet. They testified that had they run it the full distance of 1155 feet they would have gone northwest of the alley, and they appeared to be of the impression they should not cross this alley in any event. Their reason for beginning their surveys in the

railroad right-of-way was because it was the only point from which their surveys would close. It seems not to have occurred to them to begin at the point called for in the deed from Watlington to Akers and then to change the course of the last call 10 degrees so their surveys would close.

It is patent the Wilsons did not begin their surveys at the correct point, since no subdivision would begin 39 feet over in an existing railroad right-of-way. Then too, the way the Wilsons ran their surveys of the subdivision left no room for Woodland Avenue and, of course, in laying off a subdivision Akers provided for a street on which his 21 northern lots would border as is shown by his plat. It is unnecessary to recite other facts showing that the Wilsons erroneously surveyed the land embracing the subdivision, as the two just named demonstrate it beyond doubt.

The witnesses testified in person before the chancellor, who took the precaution to view the land in dispute and it appears the controversy received his careful consideration and we are of the opinion that he did not err in finding that the surveys made upon behalf of the defendants were correct and that the addition to their building did not extend over the 10 foot alley or upon plaintiff's land, but was wholly within the boundary lines of defendants' property.

Defendants' surveys put their improvement entirely on their lot and show plaintiffs have included within their boundary the 10-foot alley Akers' plat of his subdivision left open. Plaintiffs' evidence is to the effect defendants' building is 51 feet 2½ inches in width, and they ask how the chancellor adjudged a building of such dimensions could occupy a 50-foot lot. Defendants' evidence is that their building is 48½ feet wide, and it is apparent the chancellor accepted this measurement as correct.

Plaintiffs insist that their proof established a fence line between their property and the 10-foot alley and a fence line of defendants' lots No. 1 and No. 43, which fence lines have existed and have been acquiesced in for more than 15 years, and that same are controlling irrespective of the calls of the deed from Watlington to Akers, citing Hensley v. Lewis, 278 Ky. 510, 128 S. W. (2d) 917, 123 A. L. R. 537; Lewallen v. Mays, 265 Ky. 1, 95 S. W. (2d) 1125; Peters v. Hendricks, 225 Ky. 722,

386

9 S. W. (2d) 1076; Cornillaud v. Fisher, 228 Ky. 104, 14 S. W. (2d) 382, and other like cases. These opinions hold that where parties on each side of a division fence have recognized the fence as the true line for 15 years or more, they have title by adverse possession. But in the instant case the heirs of Nat H. Watlington cannot obtain title by adverse possession to land which their ancestors conveyed to defendants' predecessor in title, Akers, since the law will not permit a grantor to assert a claim adverse to his grantee, and any land conveyed to which the grantor retains possession is presumed to be held by him as agent of his grantee in the absence of an explicit disclaimer and a notorious assertion of right in the grantor, 2 C. J. S., Adverse Possession, p. 652, Section 95, subsec. b; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S. W. (2d) 394, and cases therein cited; Simmons' Adm'r v. Simmons, 150 Ky. 85, 150 S. W. 59; Galbaugh v. Rouse, 104 S. W. 959, 31 Ky. Law Rep. 1195.

Many questions are raised in briefs, but[*] having reached the conclusion that defendants' surveys conclusively show that the land in dispute is embraced in the deed from Watlington to Akers and that the plantiffs as heirs of Watlington are estopped from asserting against the grantee, or those who hold through him, anything in derogation of their ancestor's deed, it is not necessary to discuss them.

The judgment is affirmed.