## Edwards et al. v. Williamson.

May 28, 1948.

O. T. Hinton, Francis M. Burke, and Hinton & Rice for appellants.

Jean L. Auxier for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The case concerns the ownership of a semi-lunar parcel of about three-fourths of an acre. Its decision rests upon the proper construction and location of a dividing line indefinitely described in the will of Ben Williamson, who died in 1879. He devised a life estate in certain land to Matilda J. Williamson, the widow of his deceased son, Hiram, and the remainder to two grandsons, John B. and Roland T. Williamson, "to be divided between them by a line beginning at mouth of the present lane at Pond Creek, thence up to the mouth of the spring branch; *thence running through the orchard near the house to the Spring in the orchard;* thence a straight line to the top of a small point between the branch running in by the house and the one running in at the upper end of the bottom; thence with the center of that point to the top of the first knob on the fork point between the aforesaid branches; thence with the top of the said point running back to the top of the main ridge at the head of said branches, John B. to have the lower tract and Roland the upper end."[1] The life tenant died and the remaindermen respectively en-

---

1 This provision appears elsewhere in the record as: "to be divided between them by a line beginning at mouth of the present lane of Pond Creek, thence up to the mouth of the Spring Branch thence running through the orchard near the house to the Spring in the orchard thence a line to the top of a small point between the branch running in by the house and the one running in at the upper end of the Bottom, thence with the center between the aforesaid branches thence with the top of the said corner trees. John B. to have the lower tract and Roland T. the upper end." Carelessness in copying one or the other is apparent.

tered into possession of the two tracts a number of years ago. John died in 1923. Dower in his tract was allotted to his widow, Edna B. Williamson, and she afterward acquired ownership of one half the fee. Roland died in 1936 and his tract went to his family. They conveyed at least the portion of it adjoining the other tract to John H. Edwards and his wife, Zola, in August, 1940. The description in that deed calls for a line "running with the division line between John B. Williamson's tract and Roland T. Williamson's tract to the property line at or near Pond Creek." Four years later the Edwardses instituted this suit against Edna B. Williamson to quiet title.

The plaintiffs particularly pleaded that this dividing line described in their deed related to that described in Benjamin Williamson's will, as italicized in the above quotation, and undertook to prove that it is a direct line from the mouth of Spring Branch straight across to the spring in the old orchard.

The defendant claimed the line follows the course of the small stream and does not go straight across. She pleaded that the line around that way, encircling the parcel, had been agreed upon and established by the former owners, the Williamson brothers, more than fifteen years before, and that she had acquired title to it by adverse possession.

Judgment went for the defendant, and the plaintiffs appeal.

The more convincing evidence sustains the judgment. The defendant and her predecessors had this small parcel in cultivation now and then, and the plaintiffs' predecessor, Roland T. Williamson, had built a fence along the course of the branch and never claimed beyond it. This evidences an agreement or acquiescence. It appears that that line is the more natural one to have been drawn by Benjamin Williamson, since the parcel is more readily accessible to the lower tract devised to John Williamson. In addition to hearing evidence, the chancellor viewed the property.

The appellants submit that as there is no ambiguity in the language of the will describing the boundary, there could be no resort to extrinsic evidence; and, fur-

ther, that the establishment of the stream as a conditional line by parol agreement is void, the essential element of a bona fide dispute being absent.

We may summarily dispose of the second point by saying that the proposition of law is sound, but the premise is absent. There was no claim of establishment of a "conditional line." This is not a case proving an agreement to establish a line in order to settle a dispute but a case of locating the line on the ground and proving a contemporary agreement and subsequent acquiescence in such location without there ever having been a dispute. The issue is confined to the actual location of the line described in the instrument—whether it is straight across or goes around with the little stream.

On the first point the appellants invoke the familiar rule and recognized method of interpreting the description of a boundary line as being straight across from one point to another in the absence of an apparent contrary intent of the parties to the instrument, such as the mention of intermediate monuments along a diversion, or an apparent purpose to follow the course of a stream or ridge. Gover v. Queen, 300 Ky. 704, 189 S. W. 2d 672. The uncertainty in the description required the consideration of the lay of the land, that is, the topographical features and situation. It was shown that the beginning point of the division line as given in the will "at the mouth of the present lane on Pond Creek" was and is also the mouth of a stream called "Shop Hollow Branch." It is agreed that the first call from that beginning point runs up this branch, as well as up the lane, to where "Spring Branch" runs into it. Its source is a spring at a sycamore tree. Both the spring and the branch seem to be of the wet weather kind, and to be dry most of the time, at least in recent years. From the mouth of the little branch to the spring is 486.3 feet distant on a direct line, and that line follows this branch for perhaps 75 or 100 feet, at which point it diverges. According to the contention of the appellee, the boundary line continues to follow that branch around to its source. It is to be noticed that the description calls for a line from the beginning point along the lane and Shop Hollow Branch, "thence running through the orchard near the house to the spring." Whether the phrase "near the house" refers to the orchard or to

the line seems to make no difference, for they are both near the house in which Hiram Williamson's widow was living. This part of the description is followed by the specific reference to "a straight line to the top of a small point" which, it is conceded, is a line run without regard to any natural condition. Afterward natural monuments are called for. The implication is that there was intended only one "straight" or direct line cutting across, or leaving natural courses and monuments.

The fact that the two brothers from the beginning recognized the small branch or its channel as the dividing line is quite conclusive that it was and is the true boundary. The implications of the description given in the instrument, fortified by the lay of the land, together with the mutual recognition and acquiescence of the parties over an extended period of time control and negative the mere presumption that a straight and direct line cutting across from the mouth to the source of the short stream or little drain was intended. We have a number of cases supporting this conclusion as well as competency of the evidence. Among them are: Johnson v. Harris, 68 S. W. 844, 845, 24 Ky. Law Rep. 449, 451; Fidelity Realty Co. v. Flahaven Land Co., 193 Ky. 355, 236 S. W. 260; Vanover v. Consolidation Coal Company, 193 Ky. 616, 237 S. W. 21; McKeehan v. Moore, 225 Ky. 580, 9 S. W. 2d 711; Brock v. Muse, 232 Ky. 293, 22 S. W. 2d 1034; Lewallen v. Mays, 265 Ky. 1, 95 S. W. 2d 1125; Siler v. Cannon, 279 Ky. 328, 130 S. W. 2d 742.

The judgment is affirmed.