The ELK HORN COAL CORPORATION,
Plaintiff,

v.

ANDERSON COAL COMPANY, Conley, Anderson, Everidge King, Lee King, Angeline King, C. B. Bates and Ellis Bates, Defendants.

No. 525.

United States District Court
E. D. Kentucky,
Pikeville Division.

Oct. 9, 1963.

J. W. Howard, Prestonsburg, Ky., for plaintiff.

Joe Hobson, Prestonsburg, Ky., for defendants.

SWINFORD, Chief Judge.

This is an action to recover damages and penalties for the wrongful removal of coal from certain lands claimed by the plaintiff, to quiet title to the property and for an injunction against future trespasses by the defendants. Jurisdiction is based upon diversity of citizenship.

The case is divisible into two phases; one involving the plaintiff's title to the minerals in a certain tract of land referred to throughout the case as lot K–4, the other involving the location of the boundary between lots four and seven of the Elizabeth Bates dowery. The legal issues as to these two phases of the case

are quite distinct from one another and can be presented more clearly by separate discussion.

## I The Dower Tract

The history of this land as it pertains to this case must be traced back to 1872 when John W. Bates died intestate leaving extensive land holdings to be divided among his widow and heirs at law. In 1882 one of the sons took court action to have a portion of these holdings allotted to the widow, Elizabeth Bates, as her dower. In 1902 Elizabeth Bates died and the dowery was partitioned into thirteen lots, one for each child of John Bates.

Shortly after the dower tract was partitioned, a survey was made to determine the correct location of the lines between the thirteen lots. The deeds made by the court commissioners in conformity with the partitioning decree purport to describe the lots by reference to natural objects, principally trees, on the north-south boundaries and by reference to compass courses on the east-west boundaries. The survey sought to convert the descriptions in the commissioners' deeds to descriptions by metes and bounds and this process in several instances led to changes in the courses specified by the commissioners' deeds. It is a change in the course between lots four and seven that has created this phase of the controversy. Where the original commissioners' deed stated that the southern boundary of lot four would run south 78° west, the more recent deeds follow the course, north 82°45′ west in conformity with the survey.

Plaintiff has introduced evidence tracing its title back to the deeds issued by the court commissioners. The surveyed description of lot seven first appears in the next conveyance of the property after the commissioners' deed. The latter description is used in all of the deeds to lot seven up through the deed upon which the plaintiff's claim to the lot is based.

The defendants have not produced evidence to show that the property which they claim should be held to comprise the whole of lot four or to show that the southern boundary of what they claim is supposed to follow the southern boundary of lot four as created by the commissioners. The chain of title of lot four as originally laid off in the 1902 partitioning decree cannot be followed beyond the first grantees, who derive title directly from the commissioners, on the evidence presently before the court. The plaintiff has introduced evidence to show that Defendant Lee King holds a deed containing the surveyed description. The only indication that what Lee King holds is coterminous with lot four of the old dower is a recital in his deed to the effect that his grantor's interest in lot four is intended to be conveyed. The chain of title to King can be traced only as far back as 1915 on the record before the court at which time a tract stated to be lot four was partitioned between a T. G. Bates and A. W. Amburgey. King seems to hold by mesne conveyances from Amburgey. How T. G. Bates and Amburgey got this tract of land is not explained by the evidence.

The court realizes that this break in the chain of title to King cannot be the basis of a decree quieting title in the plaintiff. It is only on the strength of plaintiff's title that such a decree can be made. Rose v. Griffith, Ky., 337 S.W.2d 15 (1960). While the plaintiff's title does go back to the dower tract division, it remains to be demonstrated how the description it claims to be the correct one can be reconciled with the description given by the court commissioners when there is such a notable variance.

The origin of these lots is in the commissioners' deeds and a clear title to the whole of any one of them must be related to these deeds. Watlington v. Kasey, 293 Ky. 382, 168 S.W.2d 988 (1943); 44 Am.Jur. Quieting Title, sec. 49.

The first point in the evidence favoring the plaintiff's theory that the surveyed description correctly reflects the true location of the boundaries is the testimony of engineers employed by the plaintiff. These witnesses say that

if the southwesterly courses called for in the partitioning deeds were followed the lots would not all fit into the dower tract. It is fundamental that as between boundaries designated simply by course and boundaries designated by reference to natural objects, the first must yield if the two cannot be reconciled. Kenmont Coal Co. v. Combs, 243 Ky. 328, 48 S.W.2d 9 (1932).

The second grouping of evidence in favor of the validity of the surveyed description is a number of deeds over the past sixty or so years in the various chains of title to the dower lots wherein the metes and bounds are used to the exclusion of all references to natural objects. Acquiescence by interested parties and contemporaneous construction of deeds by those having actual knowledge of the proper boundaries are always relevant and convincing factors in a case such as this where the passage of time has obscured many of the usual sources of evidence. Kenmont Coal Co. v. Combs, supra; Kentucky Union Co. v. Shepherd, 192 Ky. 447, 234 S.W. 10 (1921).

The court has determined that the correct boundary between lots four and seven is the line running north 82° 45′ west and appearing as a call in the plaintiff's deed to lot seven of the dower tract. The relief to be accorded the plaintiff as a consequence of this finding will be presented after the discussion which follows concerning the controversy over the title to the minerals in lot K–4.

## II

Lot K–4 originates in a patent to one Miles Bates from the Commonwealth of Kentucky in 1894. It lies to the west of the Elizabeth Bates dower tract and among others it adjoins lots four and seven on a common north-south boundary.

Defendant C. B. Bates alleges in his answer that he is the owner of a certain tract of land described by reference to natural objects and lying on Beaver Creek. He testifies that this land covers Elizabeth Bates dower tract lots one, two, three and four up to Holbrook's line. Holbrook owned the southern part of lot four, the part that is the subject of the other phase of this controversy, between 1918 and 1926. The description in C. B. Bates' answer would also cover the part of K–4 lying between Holbrook's line as extended and the northern limits of the old dowery as extended. What is decisive of this matter is that C. B. Bates deed to the tract contains the sentence, "The mineral being sold on this tract of land".

The plaintiff has labored exceedingly to prove that the operative word of the sentence is, as a matter of fact, "excepted" and not "sold" as Defendant Bates would have it. But the decision in Belcher v. Elliot, 6th Cir., 312 F.2d 245 (1963) along with C. B. Bates testimony that he did not think he was getting the minerals under this deed renders this an immaterial issue. The rule in Belcher v. Elliot is that the word "sold" as used here is ambiguous and the intention of the parties to the conveyance as inferred from other evidence will determine whether the word means that the minerals had previously been sold or whether it means that they are being sold in connection with the conveyance in question. The application of the rule to this case clearly requires a finding that C. B. Bates did not acquire the minerals by any deed in evidence.

The foregoing conclusions as to the location of the boundary and the state of title to lot K–4 leads to the question of the extent of damages and the persons responsible.

## III

The southern boundary of lot four of the old dower tract was the subject of previous litigation that went as far as the Kentucky Court of Appeals. In Hall v. King, Ky., 307 S.W.2d 198 (1957), the court decided that on the facts there presented, the true location of the boundary was on the line south 78° west. There is no question of that decision being res judicata of the case here because there are different parties involved now. Carpenter v. Moorelock,

151 Ky. 506, 152 S.W. 575 (1913). Also, since there has been different evidence and a different theory of the case as it is practiced here, the earlier decision is not stare decisis as to this case. But the decision in Hall v. King does remove any elements of wilfulness from such encroachments as the defendants have made between the lines north 82°45′ west and south 78° west.

■ An intentional and knowing trespass on mineral property entitles the owner to double the value of the minerals removed without regard for the costs of extraction (KRS 433.270) and a penalty of $500 for each encroachment (KRS 352.490). An unintentional trespass resulting from inadvertence and mistake or an intentional trespass in reliance upon an honestly conceived legal right creates liability for the mineral removed according only to its value in the ground, or in practical effect, a reasonable royalty. Kycoga Land Co. v. Kentucky River Coal Corporation, 6th Cir., 110 F.2d 894 (1940); Swiss Oil Corporation v. Hupp, 253 Ky. 552, 69 S.W.2d 1037 (1934).

■ The fact that there was a court decision upholding the validity of the boundary south 78° west seems conclusive of the good faith and reason of the defendants' assumption of legal right. Swiss Oil Corporation v. Hupp, ibid. This would follow whether the decision in Hall v. King was available to the parties before or after the trespasses. It is not essential to show that a court has rendered a decision sustaining the legal right acted upon. An opinion by a competent lawyer would probably even be sufficient according to attitudes of the court reflected in the Swiss Oil case. See 253 Ky. at 560, 69 S.W.2d at 1041. The court therefore concludes that the trespasses in that area of lot seven between the line north 82°45′ west and south 78° west were not of a wilful character.

The evidence shows that the defendants removed 1697.82 tons of coal from all of lot seven. The evidence for plaintiff is that 930 tons of this came from south of the 78° line. The defendants'

witnesses give a corresponding figure of 605 tons. The court finds that 800 tons were removed from this area. Thus above the 78° line the encroachment would amount to 767.82 tons. Plaintiff owns only a 4/5 interest in lot seven, so that its interest in this coal would extend only to 614.26 tons. The court finds that the usual royalty at the time of these trespasses was 30 cents per ton. Multiplying 30 cents by 614.26 yields a product of $184.28, the compensation due plaintiff for the trespasses in this area.

■ The burden of proving that the encroachments were innocent was on the defendants. Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S.W.2d 538 (1932); Griffith v. Clark Manufacturing Co., 212 Ky. 498, 279 S.W. 971 (1926). The evidence for defendants is not sufficient to prove that the incursions on lot seven below the line south 78 west and into lot K–4 did not arise intentionally or from a reckless disregard of the location of the boundaries. The plaintiff is therefore entitled to recover according to the double damages provision of KRS 433.270. The evidence is that coal was selling for $4.00 per ton at the tipples. After deducting the cost of transportation, the factor to be applied to the coal removed is $7.10. Plaintiff's interest in the coal removed from lot seven below the 78° line is 640 tons. It has been proved that plaintiff is the owner of 26.46 tons of the coal wrongfully extracted from tract K–4. The total tonnage is therefore 666.46 and applying the rate of $7.10 to this results in damages of $4731.87.

Based on the wilful character of the trespasses on the southerly part of lot seven and the tract K–4, the plaintiff is further entitled to recover the penalties imposed by KRS 352.490. There were three encroachments on lot seven below the line south 78° west and two on tract K–4. As to the encroachments on lot seven the plaintiff may recover 4/5 of the $1500 in penalties or $1200. With respect to those on tract K–4 it is entitled to half of the $1000 in penalties or $500. The total penalties are thus $1700.

The court has rejected the plaintiff's contention that it should have a further recovery based upon the theory that the defendants have rendered a quantity of coal on its property unminable. The theory is that KRS 352.490 requires that a fifty foot border of coal be maintained around each mineral holding and that the transgressions of the defendants have made it necessary that this entire border be located on the plaintiff's property. The court does not view this provision so as to reach such a conclusion. The statute is for the protection of the adjoining landowner and as it concerns the plaintiff in the location of the defendants' trespasses, it is for the protection of the defendant. The defendants can hardly complain that a fifty foot border is not present when their own operations are responsible for its absence.

There remains the matter of demonstrating how and to what extent the different defendants are liable for the damages as determined above.

Defendant Conley Anderson has been the operator of the mine on lot four during the time of the trespasses complained of and there is no evidence to prove that he is not liable for the full amount of the plaintiff's damages. The only indication to the contrary is his testimony that he was absent from the mine during all or a part of the time his miners were working below the line south 78° west. The court knows of no theory that would make an excuse of this. The miners were his employees and he would be liable on the usual rules of respondeat superior.

Defendants Lee King, Everidge King and Ellis Bates appear to be partners in the ownership of the minerals in lot four. While Lee King is the sole owner of record, Everidge King and Ellis Bates were receiving equal shares of the royalties with him at the time of the trespasses in recognition of their interests. The state of the title appears to be more of a convenience to these defendants than a reflection of the true interests of the parties. But counsel for the plaintiff has suggested no basis for imposing liability on these three for the full amount of the damages to the plaintiff. It is true that under certain conditions the owner in fee of coal lands may be liable for the trespasses of his lessee. Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., supra; Davis v. Kentland Coal & Coke Co., 247 Ky. 642, 57 S.W.2d 542 (1933); 52 Am.Jur. Trespass, sec. 33. But these authorities are for a case where the lease covers the property of the complaining landowner. This rule would therefore apply only to the mining by the defendants north of the line south 78° west in lot seven. See Jim Thompson Coal Co. v. Dentzell, 216 Ky. 160, 287 S.W. 548 (1926). Lee King, Everidge King and Ellis Bates are therefore liable only for the $184.28 found as damages for the trespasses above the line north 78° west.

The court finds no evidence that would make Defendant C. B. Bates liable on any part of the judgment. He has not operated any mine or actively engaged in or encouraged any of the encroachments that are the subject of this action. He will only be bound by so much of the judgment as quiets the title of the plaintiff to the minerals in tract K–4 and lots three and seven of the dowery.

The plaintiff concedes that there is no ground for holding Defendant Angeline Bates liable for any part of the damages.

A judgment will this day be entered declaring that the plaintiff is the owner of the minerals in tract K–4 and lots three and seven of the old dower tract according to the description alleged in the complaint and as its interest in the several lots is alleged in the complaint. It will be adjudged that these tracts are free of any claim or right of the defendants herein to the minerals contained in them. An injunction will be entered against any further mining on these lands by the defendants herein. It will further be adjudged that the plaintiff recover of the defendant Anderson the sum of $6,616.15 and that it recover of the defendants Lee King, Everidge King and Ellis Bates the sum of $184.28.